

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-16-00216-CV

LORI DEANGELIS AND LAURIE ROBINSON

APPELLANTS AND APPELLEES

V.

PROTECTIVE PARENTS COALITION, JENNIFER OLSON, DEBORAH LOGSDON, JAYNE PEERY, MARIE HOWARD, AND HOLLY CARLESS

APPELLEES AND APPELLANTS

————————

FROM THE 153RD DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 153-282927-15

————————

## OPINION

————————

After Appellants Lori DeAngelis and Laurie Robinson (the Attorneys) filed a "Petition for Depositions Before Suit" pursuant to Texas Rule of Civil Procedure 202 (Rule 202 Petition), Appellees Protective Parents Coalition (PPC), Jennifer Olson, Deborah Logsdon, Jayne Peery, Marie Howard, and Holly Carless

(collectively, the Court Watchers[1]) moved to dismiss the petition under the Texas Citizens Participation Act (TCPA).[2] The trial court granted the Court Watchers' Motions to Dismiss and awarded them partial attorney's fees and sanctions.

In two issues, the Attorneys challenge the dismissal and the award of attorney's fees and sanctions. The Court Watchers, as cross-appellants, challenge the trial court's judgment, contending that the award of attorney's fees was too low. For the reasons set forth herein, we affirm the trial court's dismissal of the Attorneys' Rule 202 Petition. Also for the reasons set forth herein, we reverse the trial court's award of attorney's fees because it utilized an incorrect standard to determine such fees and remand the case for further proceedings on that issue.

## BACKGROUND

### I. PPC's Stated Purpose

PPC describes itself as a nonprofit organization "made up of a group of parents whose purpose is to put a spotlight on questionable practices in the family law court system" that was "formed to support parents and children who do not have a voice outside the courtroom." Also, PPC's certificate of formation states

---

[1]PPC and its members are informally referred to as the "Court Watchers."

[2]See Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001–.011 (West 2015). The TCPA is commonly referred to as Texas's "Anti-SLAPP" statute, so-called because the TCPA seeks to limit "**S**trategic **L**awsuit[s] **A**gainst **P**ublic **P**articipation." See In re Lipsky, 411 S.W.3d 530, 536 n.1 (Tex. App.—Fort Worth 2013, orig. proceeding), mand. denied, 460 S.W.3d 579 (Tex. 2015).

that its purpose is to promote "the protection of minor children by holding family courts accountable." In furtherance of its stated purpose, PPC members observe family court proceedings and post statements about the proceedings on PPC's website and its Facebook page. These publicly accessible statements can be viewed and interacted with by the general public.

It is PPC's "general position that several attorneys who receive [family court] appointments [in Tarrant County, Texas] abuse their power and act out of a profit motive more than in the best interests of the [children] they are supposed to be representing." PPC asserts that in the process of litigating family law cases, judges, attorneys, and court staff abuse their power to the detriment of children. According to PPC, it has not been well received "by the court personnel and attorneys who are being watched and reported on" by the organization. Carless, Peery, Howard, and Logsdon have all served or serve on PPC's board of directors, and Olson is PPC's executive director (collectively, PPC Officers).

The Attorneys are lawyers who have served in court-appointed ad litem roles in family court proceedings in Tarrant County and are the subjects of some of the statements posted on PPC's website and Facebook page.

## II. The Attorneys File a Rule 202 Petition Seeking Oral Depositions and Documents from the Court Watchers.

In December 2015, the Attorneys filed a verified Rule 202 Petition seeking pre-suit discovery from the Court Watchers. In their Rule 202 Petition, the Attorneys alleged that they were the subject of defamatory statements published

3

on PPC's website and Facebook page and that these statements damaged their collective and individual reputations. The Attorneys asked the trial court to allow broad discovery from the Court Watchers, including a request that the trial court authorize depositions of each Court Watcher, ostensibly to investigate potential and anticipated defamation claims. The Attorneys also pled that if the trial court granted the petition, they would "bear the reasonable expenses" related to "obtaining the requested depositions and documents."

From PPC itself, in addition to the deposition of PPC's authorized representative, the Attorneys sought the production of a multitude of documents and information related to twenty-five unique categories:

1. The identification of the author(s) and/or creator(s) of a banner bearing the photographs of each of the Petitioners that described the Petitioners as "three of the most family court appointed Fort Worth attorneys" published on the PPC Facebook Page on July 26, 2015 at 8:43 a.m.;

2. The documents, data compilations, and/or other evidence that supports the allegation published on the PPC Facebook Page that the Petitioners are "three of the most family court appointed Fort Worth attorneys" published on July 26, 2015 at 8:43 a.m.[;]

3. The names of each and every PPC member, officer, and/or director that requested the posting of the banner bearing the photographs of each of the Petitioners that described the Petitioners as "three of the most family court appointed Fort Worth attorneys" published on the PPC Facebook Page on July 26, 2015 at 8:43 a.m.;

4. The identification of the author(s) and/or creator(s) of the statement "one attorney representing children partnered with a district judge to take unearned attorney fees and child support from the mother of the children who out-cried inappropriate conduct by their father. Her primary motivation is attorney fees collected in each

4

case." [sic] published on the PPC Facebook Page on July 26, 2015 at 9:53 a.m.;

5. The identification of documents, witnesses, and/or other evidence that supports the allegation that "one attorney representing children partnered with a district judge to take unearned attorney fees and child support from the mother of the children who out-cried inappropriate conduct by their father. Her primary motivation is attorney fees collected in each case." [sic] published on the PPC Facebook Page on July 26, 2015 at 9:53 a.m.;

6. The identification of the author(s) and/or creator(s) of the statement "one attorney appeared drunk at the doorsteps of a father's home demanding to see the children she was court appointed to represent. She did not leave until the police were called" posted on the PPC Facebook Page on July 26, 2015 at 9:53 a.m.;

7. The identification of documents, witnesses, and/or other evidence that supports the allegation that "one attorney representing children partnered with a district judge to take unearned attorney fees and child support from the mother of the children who out-cried inappropriate conduct by their father. Her primary motivation is attorney fees collected in each case." [sic] published on the PPC Facebook Page on July 26, 2015 at 9:53 a.m.;

8. The identification of the author(s) and/or creator(s) of the statement that one of the Petitioners "had the power to have her paralegal direct a Tarrant County caseworker to select and destroy records collected in a social study" published on the PPC Facebook Page on July 26, 2015 at 9:53 a.m.;

9. The identification of documents, witnesses, and/or other evidence that supports the allegation that one of the Petitioners "had the power to have her paralegal direct a Tarrant County caseworker to select and destroy records collected in a social study" published on the PPC Facebook Page on July 26, 2015 at 9:53 a.m.;

10. The identification of the paralegal and social worker referred to in the allegation that one of the Petitioner[s] "had the power to have her paralegal direct a Tarrant County caseworker to select and destroy records collected in a social study" published on the PPC Facebook Page on July 26, 2015 at 9:53 a.m.;

11. The identification of the author(s) and/or creator(s) of the statement [that] one of the Petitioners "while acting as a court appointed attorney for the child, regularly advises one of the parties to fire their current attorney and to hire one of her friends to represent them instead" published on the PPC Facebook Page on July 26, 2015 at 9:53 a.m.;

12. The identification of documents, witnesses, and/or other evidence that supports the allegation that one of the Petitioners "while acting as a court appointed attorney for the child, regularly advises one of the parties to fire their current attorney and to hire one of her friends to represent them instead" published on the PPC Facebook Page on July 26, 2015 at 9:53 a.m.;

13. The identification of the author(s) and/or creator(s) of the statement "attorneys consistently file motions to remove her as a court appointment due to misconduct and yet the judges keep appointing her" published on the PPC Facebook Page on July 26, 2015 at 9:53 a.m.[;]

14. The identification of documents, witnesses, and/or other evidence that supports the allegation that "attorneys consistently file motions to remove her as a court appointment due to misconduct and yet the judges keep appointing her" published on the PPC Facebook Page on July 26, 2015 at 9:53 a.m.;

15. The identification of each attorney referred to in the allegation that "attorneys consistently file motions to remove her as a court appointment due to misconduct and yet the judges keep appointing her" published on the PPC Facebook Page on July 26, 2015 at 9:53 a.m.[;]

16. The identification of the author(s) and/or creator(s) of the statement that one of the Petitioners "spends much of her personal time tracking down adversary clients' personal business and contacting the other party soliciting new lawsuits or vindictive acts" published on the PPC Facebook Page on July 26, 2015 at 9:53 a.m.[;]

17. The identification of documents, witnesses, and/or other evidence that supports the allegation that one of the Petitioners "spends much of her personal time tracking down adversary clients' personal business and contacting the other party soliciting new lawsuits or vindictive acts" published on the PPC Facebook Page on July 26, 2015 at 9:53 a.m.;

6

18. The identification of the author(s) and/or creator(s) of any statement regarding Petitioners that is published on the PPC Facebook Page or website;

19. The identification of documents, witnesses, and/or other evidence that supports any published material regarding the Petitioners on the PPC Facebook Page or website;

[20]. The names and contact information for each and every member of the PPC [who] has given information to the PPC regarding the Petitioners[;]

2[1]. Copies of any and all correspondence between PPC and any of its agents, members, and/or directors regarding the Petitioners or any published statements on the PPC website or Facebook Page regarding the Petitioners[;]

2[2]. Copies of any and all policies and procedures in place for PPC, PPC's members, agents, and/or directors to publish materials, comments, allegations, and proposed facts on its website and/or Facebook Page[;]

2[3]. Copies of any and all documents [that] evidence any communication, authorization, and/or agreements that the PPC uses for members who participate in "Court Watchers"[;]

2[4]. Copies of all documents, e-mails, electronically stored information, and tangible things dated January 8, 2014 until present identifying all individuals and business entities [that] PPC has approached for the purposes of doing business with said individuals/business entities[;] [and]

2[5]. Copies of any and all documents showing that the Petitioners gave PPC their permission to publish their images on PPC's Facebook Page and/or website.

The proposed discovery requested from the PPC officers was equally far-reaching. From each of the five PPC Officers, the Attorneys sought not only their depositions, but also a plethora of documents and information including:

1. Copies of any and all correspondence between [the PPC Officer] and any other agents, members, and/or directors of PPC

7

regarding the Petitioners or any published statements on the PPC website or Facebook Page regarding the Petitioners.

    2.    Copies of any and all service or work performed for PPC by [the PPC Officer] relating to any published material on PPC's Facebook and/or website referencing Petitioners.

    3.    Copies of any and all published material, non-published material, and photographs obtained by [the PPC Officer] and provided to PPC regarding the Petitioners.

    4.    The identification of documents, witnesses, and/or other evidence that supports any published material regarding the Petitioners that [the PPC Officer] published on any personal Facebook page, Twitter account, website, or other social media site[.]

## III.    The Court Watchers File Motions to Dismiss the Rule 202 Petition Under the TCPA.

In response to the Rule 202 Petition, the Court Watchers filed Motions to Dismiss the petition under the dismissal provisions of the TCPA.[3]  *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.003.  The Court Watchers alleged that the Rule 202 Petition was subject to dismissal under the TCPA because it was a retaliatory legal action aimed at chilling their exercise of their constitutional rights of freedom of speech, petition, and association.

After the Court Watchers filed their Motions to Dismiss, the Attorneys amended their Rule 202 Petition and responded to the motions.  In their responses, the Attorneys reiterated that the Court Watchers could be liable for false, defamatory statements that accused the Attorneys of "criminal and unethical acts."

---

[3]Carless filed a Motion to Dismiss, and the remaining Court Watchers joined together to file another Motion to Dismiss.

They alleged that the Court Watchers "either published or allowed for the publishing of these statements" and stated that they sought discovery to "investigate potential claims . . . as well as to investigate potential parties." The Attorneys further contended that dismissal was inappropriate under the TCPA because: (1) the TCPA does not apply to Rule 202 petitions; (2) the Court Watchers had not established that they were exercising their rights of free speech, petition, or association when making the allegedly defamatory statements; and (3) even if the Court Watchers had met their initial burden of invoking the TCPA's protections, the Attorneys could show clear and specific evidence of all elements constituting a prima facie claim for defamation.

In their response to the Motions to Dismiss, the Attorneys also pinpointed the following statements made on either the PPC Facebook page[4] or the PPC website, claiming they were defamatory:

- The Attorneys were among the "most family court-appointed Fort Worth attorneys" (which, according to the Attorneys, implies that they were "receiving a disproportionate amount of court appointments on the basis of corruption or illegitimate reasons");

- One attorney "representing children partnered with a district judge to take unearned attorney fees and child support . . . . Her primary motivation [was] attorney fees collected in each case";

---

[4]Many of the statements that the Attorneys complain of were comments made by anonymous or at least partially anonymous individuals on PPC's Facebook page underneath posts that were made by PPC.

9

- One attorney "had the power to have her paralegal direct a Tarrant County caseworker to select and destroy records collected in a social study";

- One attorney, "while acting as a court appointed attorney for [a] child, regularly advises one of the parties to fire their current attorney and to hire one of her friends to represent them instead";

- "Attorneys consistently file motions to remove [one of the Attorneys] as a court appointment due to misconduct and yet the judges keep appointing her";

- One attorney "spends much of her personal time tracking down adversary clients' personal business and contacting the other party soliciting new lawsuits or vindictive acts";

- The Attorneys were among the "worst" attorneys in Fort Worth or Tarrant County;

- A post describing DeAngelis as a "nightmare," as "two faced," as having violated confidences, as having lied under oath, as having been paid for "worthless services," and as having "made her money and career by sitting at the [c]ourthouse waiting for court appointments rather than being [c]hosen as an attorney by a litigant";

- "You would rather have the Devil on your side than anyone of these [c]ourtroom [w]all hall [h]uggers in charge of the outcome of your [children's] rights";

- Statements that DeAngelis listened to lies and aided in corruption and kidnapping with a judge;

- "DeAngelis and Robinson are [the] . . . most appointed Adlietems [sic] and Amicus Attorneys appointed . . . . [T]he children are sold to the highest bidder"; and

- The Attorneys are "Hall Huggers," "make their living by staying at the courthouse to receive appointments where they know their friends (Judges) will keep a paycheck in their pocket[s]," and go at least once a week to a downtown Fort Worth bar for an "'Exparte' Party."

To their responses, the Attorneys attached an affidavit from DeAngelis in which she generally averred that the above statements: (1) are false; (2) tended

10

to injure her reputation and expose her to hatred, ridicule, financial injury, and impeachment of her honesty and integrity; (3) injured her in her profession; and (4) caused her embarrassment and "great emotional distress." The Attorneys also attached scores of printouts of the alleged defamatory statements from PPC's website and Facebook page. The responses provided no evidence explaining why the pre-suit depositions and document discovery sought from the Attorneys "prevent[ed] a failure or delay of justice in an anticipated suit" or why "the likely benefit of allowing [the Attorneys] to take the requested deposition[s] to investigate a potential claim outweigh[ed] the burden or expense of the procedure." *See* Tex. R. Civ. P. 202.4.

## IV.   The Trial Court Holds a Hearing on the Motions to Dismiss, Grants the Motions, and Enters a Final Judgment Awarding Partial Attorney's Fees and Sanctions.

On February 11, 2016, the trial court held a hearing on the Court Watchers' Motions to Dismiss. Among other arguments, the Court Watchers emphasized that the complained-of statements were matters of public concern implicating the TCPA and touching on their First Amendment rights of free speech and association because the statements concerned the operation of the Tarrant County family courts and the welfare of children affected by the court system. The Court Watchers further contended that the Attorneys had not produced sufficient evidence showing that any of the statements at issue damaged them. The Court Watchers also argued that some of the individual Court Watchers had not made any of the challenged statements and should not be held liable for others'

11

statements. Finally, Carless's attorney pointed out that the Rule 202 Petition was facially invalid because it impermissibly requested the production of numerous documents from the Court Watchers, something not explicitly provided for under the plain language of Rule 202.

The Attorneys argued that the TCPA did not apply to Rule 202 petitions; that the Court Watchers had not met their burden to show that the Attorneys' Rule 202 Petition affected their constitutional rights of free speech, association, or petition; and that even if the Court Watchers had met that burden, the Attorneys could show clear and specific evidence of a prima facie case for a defamation claim.

At the end of the February 11, 2016 hearing, the trial court granted the Court Watchers' Motions to Dismiss. The trial court also reserved for a later date its decision concerning the Court Watchers' request for an award of attorney's fees and sanctions under the TCPA. The next day, the trial court signed orders granting the Court Watchers' Motions to Dismiss. The Attorneys then nonsuited their request for pre-suit discovery from two other parties. Later, the Court Watchers renewed their request for an award of attorney's fees and sanctions. The Attorneys objected to any such award, but the trial court overruled the objection and signed a Final Judgment dismissing the Rule 202 Petition, awarding partial attorney's fees of $2,000 to Carless and $5,747.50 to the remaining Court Watchers, and requiring each Appellant to pay sanctions of $50. This appeal followed.

## ANALYSIS

## I.    The TCPA Applies to Rule 202 Petitions.

In their first issue, the Attorneys argue that the trial court erred in granting the Court Watchers' Motions to Dismiss under the TCPA. They initially contend that the dismissal of their Rule 202 Petition was inappropriate because the TCPA's provisions do not apply to Rule 202 petitions. This is an issue of first impression in this court.

### A.    The Texas Rules of Statutory Construction

We resolve whether the TCPA applies to the Rule 202 Petition by examining the TCPA's language, which we construe de novo. *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 899 (Tex. 2017); *Nathan v. Whittington*, 408 S.W.3d 870, 872 (Tex. 2013). This court must enforce the statute "as written" and "refrain from rewriting text that lawmakers chose."[5] *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 443 (Tex. 2009). We must also limit our analysis to the words of the statute and apply the plain meaning of those words "unless a different meaning

---

[5]As the Texas Supreme Court admonished 127 years ago:

> When the purpose of a legislative enactment is obvious from the language of the law itself, there is nothing left to construction. In such case it is vain to ask the courts to attempt to liberate an invisible spirit, supposed to live concealed within the body of the law, and thus interpret away the manifest legislative intention by embracing subjects not fairly within the scope of the statute.

*Dodson v. Bunton*, 17 S.W. 507, 508 (Tex. 1891).

13

is apparent from the context or the plain meaning leads to absurd or nonsensical results." *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011). While we consider the specific statutory language at issue, we must also look to "the statute as a whole" and "endeavor to read the statute contextually, giving effect to every word, clause, and sentence." *In re Office of Att'y Gen.*, 422 S.W.3d 623, 629 (Tex. 2013); *see also Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.*, 515 U.S. 687, 698, 115 S. Ct. 2407, 2413 (1995); *TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). Thus, we begin our analysis with the TCPA's words and consider the apparent meaning of those words within their context. *Jaster v. Comet II Const., Inc.*, 438 S.W.3d 556, 563 (Tex. 2014); *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 484 (Tex. 1998); *see also Gustafson v. Alloyd, Co.*, 513 U.S. 561, 584, 115 S. Ct. 1061, 1074 (1995) (Thomas, J., dissenting) ("[T]he starting point in every case involving the construction of a statute is the language itself." (citations and internal quotation marks omitted)).

## B.     Rule 202 Petitions Are "Legal Actions" under the TCPA.

The purpose of the TCPA is to "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem. Code Ann. § 27.002; *see also D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 433–35 (Tex. 2017)

(holding that the TCPA seeks to balance the tension between protecting First Amendment freedoms and preserving the rights of individuals to file meritorious lawsuits); *accord In re Lipsky*, 460 S.W.3d, 579, 584 (Tex. 2015).

Once a motion to dismiss is filed under the TCPA, a burden-shifting mechanism goes into effect. *Lipsky*, 460 S.W.3d at 586–87. First, a defendant moving for dismissal must show that the plaintiff filed a "**legal action**" that is based on, relates to, or is in response to the defendant's exercise of the right of free speech, the right to petition, or the right of association. Tex. Civ. Prac. & Rem. Code Ann. §§ 27.003(a), .005(b) (emphasis added). Second, if the defendant satisfies that burden, to avoid dismissal, the plaintiff must establish with clear and specific evidence a prima facie case for "each essential element of the claim in question." *Id.* § 27.005(c). Clear and specific evidence means that the plaintiff "must provide enough detail to show the factual basis for its claim." *Lipsky*, 460 S.W.3d at 591. When resolving a motion to dismiss under the TCPA, the court must consider pleadings and "supporting and opposing affidavits stating the facts on which the liability or defense is based." Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a). Finally, if the trial court dismisses the legal action, it must also award court costs and reasonable attorney's fees to the movant along with sanctions against the party who filed the legal action. *Id.* § 27.009(a); *see Rich v. Range Res. Corp.*, 535 S.W.3d 610, 612 (Tex. App.—Fort Worth 2017, pet. denied).

The Attorneys contend that a Rule 202 petition is not a "legal action" under the TCPA, and thus the TCPA does not apply to Texas Rule of Civil Procedure

202 and the trial court erred in dismissing the Rule 202 Petition. We disagree because the Attorneys' proposed interpretation ignores the TCPA's plain language. *See Aldridge v. Williams*, 44 U.S. (3 How.) 9, 24 (1845) ("The law as it passed is the will of the majority of both houses, and the only mode in which that will is spoken is in the act itself; and we must gather their intention from the language there used."); *accord Entergy Gulf States*, 282 S.W.3d at 462 (Willett, J., concurring) ("The law begins with language, and it smacks of Lewis Carroll when critics, voices raised high in derision, inveigh against 'judicial activism' because judges refrain from rewriting the text lawmakers chose.").

A "legal action" subject to the TCPA's dismissal provisions is defined to include a "lawsuit, cause of action, **petition**, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief." Tex. Civ. Prac. & Rem. Code Ann. § 27.001(6) (emphasis added). Texas Rule of Civil Procedure Rule 202.1 states that a person may "petition" a court for pre-suit discovery. Tex. R. Civ. P. 202.1; *see also* Tex. R. Civ. P. 202.2 (listing requirements of a rule 202 "petition"); *Action in Equity*, BLACK'S LAW DICTIONARY (10th ed. 2014); *Relief*, BLACK'S LAW DICTIONARY (10th ed. 2014). "[R]ule 202, like all the rules of civil procedure, was fashioned by the Texas Supreme Court as a means of 'obtain(ing) a just, fair, equitable and impartial adjudication of the rights of litigants under established principles of substantive law.'" *Combs v. Tex. Civil Rights Project*, 410 S.W.3d 529, 534 (Tex. App.—Austin 2013, pet. denied) (quoting *City of Dallas v. Dall. Black Fire Fighters Ass'n*, 353 S.W.3d 547,

16

554 (Tex. App.—Dallas 2011, no pet.)). The rule incorporates equitable bill of discovery procedures previously found in other rules. *In re Bed Bath & Beyond, Inc.*, No. 02-07-00316-CV, 2007 WL 4292304, at *1 (Tex. App.—Fort Worth Dec. 7, 2007, orig. proceeding) (mem. op.).

The Attorneys erroneously contend that a Rule 202 petition is not a "legal action" under Section 27.001(6) of the TCPA but merely a "procedural request that would not result in legal or equitable relief." On the contrary, a petition for pre-suit discovery pursuant to Rule 202 is a "petition" or "other judicial pleading or filing that requests legal or equitable relief" and thus fits squarely into TCPA's covered filings. *Cf. In re Texas*, 110 F. Supp. 2d 514, 521–22 (E.D. Tex. 2000) (holding that Rule 202 petition is a "civil action" for purposes of the federal removal statute).[6] Thus, our inquiry on this point begins and ends here. *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254, 112 S. Ct. 1146, 1149 (1992) ("When the words of a statute are unambiguous, then, the first canon is the last: 'judicial inquiry is complete.'"). We hold that Section 27.001(6)'s definition of "legal action" includes

---

[6]The federal district court in *In re Texas* noted that Rule 202 "possesses all the elements of a judicial proceeding" in that "there is a controversy between parties"; "there are pleadings" (the Rule 202 petition); a party seeks relief (an order under Rule 202); "and a judicial determination is required—specifically, whether authorizing depositions may prevent injustice or, on balance, will not be unduly burdensome." 110 F. Supp. 2d at 521–22. "Finally, both parties will be required to adhere to the state court's orders" on the Rule 202 petition. *Id.* at 522.

Rule 202 petitions. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001(6).[7] We overrule this portion of the Attorneys' first issue.

<hr>

[7]This holding further is supported by the Austin Court of Appeals's decision in *In re Elliott*, 504 S.W.3d 455, 463 (Tex. App.—Austin 2016, orig. proceeding). In that case, like here, the court considered a party's arguments that the TCPA's purpose was to dispose of lawsuits, that a Rule 202 petition for pre-suit discovery was not a lawsuit, and that the TCPA therefore did not apply to a rule 202 petition. *Id.* Applying the rules of statutory construction set forth above, the court concluded that a Rule 202 petition is a "legal action" subject to the TCPA. *See id.* at 463–66. The court explained,

> On its face, the Rule 202 petition fits the description of covered filings under the TCPA—i.e., it is a petition or other judicial pleading or filing that seeks legal or equitable relief against Elliott—a pre-suit deposition . . . .
>
> . . . .
>
> Rule 202 requires a person seeking an order from the trial court for a presuit deposition to file a "petition." When construing the Act, we presume that the Legislature included each word in the statute for a purpose and that the Legislature promulgated the definition of a "legal action" in the Act with an awareness of the Texas Rules of Civil Procedure, including Rule 202's provision for the filing of a "petition."
>
> . . . .
>
> The genesis of Rule 202 is in equity. . . . Thus, the relief sought by a Rule 202 petition investigating a potential claim or suit is an equitable remedy. In addition, Black's Law Dictionary defines "relief" as "[t]he redress or benefit, esp. equitable in nature (such as an injunction or specific performance) that a party asks of a court"; it defines "benefit" as "[a]dvantage; privilege." A trial court's grant of a Rule 202 petition ordering a person to be deposed before a suit is filed provides a party with a benefit that it would not otherwise be entitled to receive.

*Id.* at 463–65 (citations and footnotes omitted); *see also Int'l Ass'n of Drilling Contractors v. Orion Drilling Co., L.L.C.*, 512 S.W.3d 483, 492 (Tex. App.—

## II. The Trial Court Correctly Granted the Motions to Dismiss Pursuant to the TCPA.

Because we hold that the TCPA applies to Rule 202 petitions we must next address the Attorneys' alternative argument in their first issue that the trial court erred in granting the Court Watchers' dismissal motions. We review de novo a trial court's ruling on a motion to dismiss under the TCPA. *Lane v. Phares*, 544 S.W.3d 881, 886 (Tex. App.—Fort Worth Feb. 15, 2018, no pet.); *Dall. Morning News, Inc. v. Hall*, 524 S.W.3d 369, 374 (Tex. App.—Fort Worth 2017, pet. pending). The legislature requires us to construe the TCPA liberally to fully effectuate its purpose and intent. *Hotchkin v. Bucy*, No. 02-13-00173-CV, 2014 WL 7204496, at *1 (Tex. App.—Fort Worth Dec. 18, 2014, no pet.) (mem. op.) (citing Tex. Civ. Prac. & Rem. Code Ann. § 27.011(b)).

### A. The Rule 202 Petition is "Based on, Relates to, or is in Response to" the Court Watchers' Right of Free Speech.

Since a Rule 202 Petition falls under the TCPA's purview, we must now consider the Attorneys' contention that the Court Watchers did not meet their initial burden of showing that the Rule 202 Petition "is based on, relates to, or is in response to a party's exercise" of the rights of free speech, right to petition, and right of association. Tex. Civ. Prac. & Rem Code § 27.003(a). Specifically, the

---

Houston [1st Dist.] 2016, pet. denied) ("[T]he TCPA applies to Rule 202 proceedings, when properly invoked through a motion to dismiss brought under the Act."). *But see Elliott*, 504 S.W.3d at 473–82 (Pemberton, J., concurring) (concluding that the majority's holding that a Rule 202 petition is a "legal action" under the TCPA is incorrect and "problematic").

19

Attorneys allege that the affidavits the Court Watchers submitted in support of their motion to dismiss are conclusory and present "no evidence" of the exercise of their constitutional rights. In making this argument, the Attorneys misinterpret the Court Watchers' burden under the TCPA.

The Attorneys' Rule 202 Petition establishes on its face that they base their entire court action on statements or comments made by the Court Watchers and others on the PPC Facebook page or the PPC website that, as explained below, involve the exercise of free speech. By contending that the Court Watchers must present affirmative evidence proving that the Attorneys' claims as described in their Rule 202 Petition arise from or relate to protected rights, the Attorneys misstate TCPA procedure. Instead, the TCPA provides that to determine whether a legal action should be dismissed, "the court shall consider **the pleadings** and supporting and opposing affidavits stating the facts on which the liability or defense is based." Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a) (emphasis added). "Under Section 27.006(a) of the [TCPA], the trial court may consider pleadings when determining whether to dismiss a legal action—the [TCPA] does not require a movant to present testimony or other evidence to satisfy his evidentiary burden." *Elliott*, 504 S.W.3d at 462 (citing *Lipsky*, 460 S.W.3d at 587; *Serafine v. Blunt*, 466 S.W.3d 352, 360 (Tex. App.—Austin 2015, no pet.)). "When it is clear from the plaintiff's pleadings that the action is covered by the [TCPA], **the defendant need show no more**." *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017) (emphasis added).

We need look no further than the Rule 202 Petition itself to determine that it involves the Court Watchers' right to free speech. It is undisputed that the Rule 202 Petition seeks discovery related to statements about the Attorneys' service as court-appointed attorneys practicing in the family courts that were "published on the PPC internet website as well as the PPC Facebook Page as well as other social media sites such as individual PPC member's Facebook Pages, websites, and Twitter accounts." The Attorneys asserted "that the internet website and the Facebook Page . . . are general publication intended for consumption by the general public. In addition, the individual member's Facebook Pages, websites, and Twitter accounts are general publications intended for consumption by the general public."

"One of the foundational principles of American democracy is the freedom to comment on matters of public concern." *Rosenthal*, 529 S.W.3d at 433 (citing *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 253, 122 S. Ct. 1389, 1403 (2002) ("The right to think is the beginning of freedom, and speech must be protected . . . because speech is the beginning of thought.")); *see also* George Washington, quoted in GREAT QUOTES FROM GREAT LEADERS 64 (compiled by Peggy Anderson (1990)) ("If the freedom of speech is taken away then dumb and silent we may be led, like sheep to the slaughter."). "Both the U.S. Constitution and the Texas Constitution 'robustly protect freedom of speech.'" *Dall. Morning News v. Tatum*, No. 16-0098, 2018 WL 2182625, at *4 (Tex. May 11, 2018) (quoting *Rosenthal*, 529 S.W.3d at 431). The First Amendment's protections for speech were

21

"fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 269, 84 S. Ct. 710, 720 (1964) (quoting *Roth v. United States*, 354 U.S. 476, 484, 77 S. Ct. 1304, 1308 (1957)); *see* U.S. Const. amend. I ("Congress shall make no law . . . abridging the freedom of speech"). "The Texas Constitution also explicitly protects freedom of expression, declaring that '[e]very person shall be at liberty to speak, write or publish his opinions on any subject . . . and no law shall ever be passed curtailing the liberty of speech.'" *Rosenthal*, 529 S.W.3d at 433 (quoting Tex. Const. art. I, § 8); *see KGBT v. Briggs*, 759 S.W.2d 939, 944 (Tex. 1988) (Gonzalez, J., concurring) ("[T]he rights of free speech . . . guaranteed by our Texas Constitution are more extensive than those guaranteed by the Federal Constitution."). Finally, speech may not be prohibited merely because one disagrees with its content or it offends one's sensibilities. *See FCC v. Pacifica Found.*, 438 U.S. 726, 745, 98 S. Ct. 3026, 3038 (1978) ("[T]he fact that society may find speech offensive is not a sufficient reason for suppressing it."); *see also Texas v. Johnson*, 491 U.S. 397, 414, 109 S. Ct. 2533, 2545 (1989) ("If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable.").

The TCPA defines "the exercise of the right of free speech" to include all "communication[s] made in connection with a matter of public concern." Tex. Civ. Prac. & Rem. Code Ann. § 27.001(3). A "communication" is defined as "the making

22

or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1). The TCPA further defines "matter of public concern" to broadly include "economic[] or community well-being," "the government," and "a good, product, or service in the marketplace." *Id.* § 27.001(7); *Branton v. City of Dallas*, 272 F.3d 730, 739 (5th Cir. 2001) ("Matters of public concern are those which can be fairly considered as relating to any matter of political, social, or other concern to the community." (citations and internal quotation marks omitted)).

Here, the alleged disparaging statements that are the subject of the Attorneys' Rule 202 Petition are communications related to substantial matters of public concern, specifically the operation of the judicial branch and the court's appointment of attorneys to serve as ad litems. These statements undisputedly concern "economic[] or community well-being" and "the government." It is axiomatic that publicly available statements about courts and court-appointed attorneys rank among the uppermost matters of public concern. *See, e.g.*, *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 839, 98 S. Ct. 1535, 1541 (1978) ("The operations of the courts and the judicial conduct of judges are matters of utmost public concern."); *Eisenhour v. Weber Cty.*, 744 F.3d 1220, 1228 (10th Cir. 2014) (holding that investigations of judicial integrity involve a public interest); *Pucci v. Nineteenth Dist. Ct.*, 628 F.3d 752, 756, 768 (6th Cir. 2010) (holding that the nature of a deputy court administrator's comments about a trial judge's practice of "interjecting his personal religious beliefs into judicial

23

proceedings and the business of the court . . . implicates the propriety and legality of public, in-court judicial conduct, and renders her speech of sufficient public gravity to warrant First Amendment protection"); *United States v. Richey*, 924 F.2d 857, 860 (9th Cir. 1991) ("The potential bias of a judge is clearly a matter of public concern."); *Scott v. Flowers*, 910 F.2d 201, 211 (5th Cir. 1990) (holding that a justice of the peace's letter, and comments made in connection with the letter, which criticized the way the district attorney's office and the county court-at-law handled traffic ticket appeals, addressed matters of legitimate public concern); *cf. Lee v. Nicholl*, 197 F.3d 1291, 1295 (10th Cir. 1999) ("Speech that calls attention to a government's failure to discharge its governmental duties generally constitutes a matter of public concern."); *Marohnic v. Walker*, 800 F.2d 613, 616 (6th Cir. 1986) ("Public interest is near its zenith when ensuring that public organizations are being operated in accordance with the law.").

Further, public or private communications related to the provision of legal services to the public by licensed attorneys, such as the Attorneys in this case, are recognized as matters of "public concern" implicating the exercise of free speech under the TCPA.[8]  *See, e.g.*, *Deaver v. Desai*, 483 S.W.3d 668, 673 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (holding that a website dedicated to criticism of attorney addressed the attorney's legal services, which were offered on the public

---

[8]The Attorneys acknowledge that the complained-of statements go to their "fitness to conduct their business."

24

marketplace, and qualified as a communication made in connection with a matter of public concern, i.e., the exercise of free speech within scope of TCPA); *Avila v. Larrea*, 394 S.W.3d 646, 655 (Tex. App.—Dallas 2012, pet. denied) (holding that a communication about lawyer's handling of cases was a matter of public concern because it related to lawyer's services in the marketplace). Finally, Texas courts recognize—a point tacitly conceded by the Attorneys' counsel at the hearing on the Motions to Dismiss—that communications or statements regarding the welfare of children are matters of public concern that involve the right to free speech under the TCPA. S*ee, e.g., Watson v. Hardman*, 497 S.W.3d 601, 607 (Tex. App.—Dallas 2016, no pet.) (holding that accusations that plaintiff stole charitable funds raised for the benefit of child were exercises of free speech under the TCPA); *Bilbrey v. Williams*, No. 02-13-00332-CV, 2015 WL 1120921, at *11 (Tex. App.—Fort Worth Mar. 12, 2015, no pet.) (mem. op.) (statements related to youth baseball coach losing his temper and yelling at child related "to the safety of children in the community" and fell under the right of free speech under the TCPA). Thus, we hold that the Rule 202 Petition demonstrates on its face that it "is based on, relates to, or is in response" to the Court Watchers' right to free speech.[9] We overrule this part of the Attorneys' first issue.

---

[9]Because we hold that the Rule 202 Petition implicates the Court Watchers' right to free speech, there is no need to determine whether it also concerns their rights of petition or association. Further, because the Rule 202 Petition itself shows that it involves the right to free speech on a matter of public concern, there

25

**B.      The Attorneys Provided No Evidence of Their Need to Conduct Pre-Suit Discovery.**

Based on our holding that the Rule 202 Petition touched upon the Court Watchers' exercise of their right of free speech, we must now consider the Attorneys' next alternative contention in their first issue: that the trial court erred in granting the Motions to Dismiss because the Attorneys met their burden to show by clear and specific evidence a prima facie case for "each essential element of the claim in question." *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c).

### 1.      What is the "Claim in Question" for a Rule 202 Petition?

When the TCPA applies and the movant has met its initial burden to show that the legal action relates to the exercise of one of three constitutionally protected rights, the nonmovant may avoid dismissal of the legal action by providing clear and specific evidence that establishes a prima facie case "for each essential element **of the claim in question**." *Id.* (emphasis added). But what is the "claim in question"? Is it the Rule 202 Petition itself, meaning that the nonmovant must show clear and specific evidence supporting the required findings for pre-suit discovery under Rule 202? *See* Tex. R. Civ. P. 202.4(a) (stating that the court must grant a pre-suit deposition if it finds that allowing the deposition would prevent a failure or delay of justice in an anticipated suit or that the likely benefit of the discovery to investigate a potential claim outweighs any burden). Or is it the

---

is no need to consider the Attorney's objections and arguments regarding the affidavits submitted by Court Watchers in support of the Motions to Dismiss.

anticipated or potential claim—here, defamation—that the Rule 202 discovery seeks to investigate? *See Lipsky*, 460 S.W.3d at 593 (listing the elements of defamation). This is another issue of first impression for this court.

These questions are easily answered by turning to Rule 202's plain language. Rule 202 permits a person to petition the court for authorization to take a deposition before filing a suit in two circumstances: "(1) to perpetuate or obtain the person's own testimony or that of any other person for use in an anticipated suit; or (2) to investigate a potential claim or suit." Tex. R. Civ. P. 202.1(a), (b). This case undisputedly involves the investigation of a potential claim or suit. *See* Tex. R. Civ. P. 202.1(b).

Rule 202 does not require a petitioner to plead a specific cause of action; instead, it requires only that the petitioner state the subject matter of the anticipated action, if any, and the petitioner's interest therein. *See In re Emergency Consultants, Inc.*, 292 S.W.3d 78, 79 (Tex. App.—Houston [14th Dist.] 2007, orig. proceeding) (noting that requiring a Rule 202 petitioner to plead a viable claim "would eviscerate the investigatory purpose of Rule 202 and essentially require one to file suit before determining whether a claim exists" and would place "counsel in a quandary, considering counsel's ethical duty of candor to the court and the requirements of Texas Rule of Civil Procedure 13"); *see also City of Houston v. U.S. Filter Wastewater Grp., Inc.*, 190 S.W.3d 242, 245 n.2 (Tex. App.—Houston [1st Dist.] 2006, no pet.) ("Rule 202 does not require a petitioner to plead a specific cause of action."). "[A] petition under [R]ule 202 is ultimately a petition that asserts

27

no substantive claim . . . upon which relief can be granted. A successful [R]ule 202 petitioner simply acquires the right to obtain discovery—discovery that may or may not lead to a claim or cause of action." *Tex. Civil Rights Project*, 410 S.W.3d at 534.

Stated otherwise, when a Rule 202 petitioner seeks to investigate a potential claim or suit, the petitioner requests pre-suit discovery **precisely because** he or she does not yet know whether there is clear and specific evidence of a viable cause of action. *See* Tex. R. Civ. P. 202.1(b), 202.2(d)(2), 202.4(a)(2); *see also In re DePinho*, 505 S.W.3d 621, 624 (Tex. 2016) (orig. proceeding) ("[A] party filing a Rule 202 petition often does not have the facts to establish its claims."). In that circumstance, there is no way that the TCPA can be reasonably construed to require a petitioner to establish clear and specific evidence of a prima facie case for the potential cause of action. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c). *But see Elliot*, 504 S.W.3d at 466 (holding that to avoid dismissal, the Rule 202 petitioner needed to establish a prima facie case for each essential element of a potential defamation claim to avoid dismissal under the TCPA).

Moreover, any construction of the TCPA that requires a Rule 202 petitioner to establish clear and specific evidence of an underlying claim (rather than of the entitlement to Rule 202 relief) would violate two express purposes of the TCPA. First, that construction would impede a Rule 202 petitioner's rights to file a meritorious lawsuit for demonstrable injury by preventing the petitioner from discerning, after investigation, whether a lawsuit is in fact meritorious. *See* Tex.

28

Civ. Prac. & Rem. Code Ann. § 27.002. Second, that construction, contrary to Section 27.011(a) of the TCPA, would lessen (or even eliminate) the Rule 202 remedy by requiring a petitioner who does not claim to have evidence supporting all elements of an underlying cause of action to nonetheless provide such evidence to avoid dismissal and sanctions. *See id.* § 27.011(a) ("This chapter does not abrogate or lessen any other defense, remedy, immunity, or privilege available under other constitutional, statutory, case, or common law **or rule provisions**." (emphasis added)). In other words, holding such paradoxically forces a petitioner to provide the very information he lacks and filed a Rule 202 petition to obtain.

Thus, Rule 202's purpose and words compel us, in the context of a TCPA challenge to a request for Rule 202 pre-suit discovery, to hold that the applicant must establish by clear and specific evidence a prima facie case for the elements of obtaining a pre-suit deposition, namely that:

(1) allowing the petitioner to take the requested deposition may prevent a failure or delay of justice in an anticipated suit[;] or

(2) the likely benefit of allowing the petitioner to take the requested deposition to investigate a potential claim outweighs the burden or expense of the procedure.

Tex. R. Civ. P. 202.4(a); *see In re Jorden,* 249 S.W.3d 416, 423 (Tex. 2008) (orig. proceeding); *see also Glassdoor, Inc. v. Andra Grp., LP*, No. 05-16-00189-CV, 2017 WL 1149668, at *10 (Tex. App.—Dallas Mar. 24, 2017, pet. granted) (mem. op.) ("Assuming that Chapter 27 applied to Andra's Rule 202 petition, we conclude

29

that § 27.005(c) required Andra to produce clear and specific evidence only as to the requirements of Rule 202.4(a)(2).").

### 2. The Attorneys Did Not Establish the Prima Facie Elements Required Under Rule 202.

Flowing from our conclusion above, we next examine whether the Attorneys established, by clear and specific evidence, the prima facie elements that entitle them to pre-suit discovery under Rule 202. *See* Tex. R. Civ. P. 202.4(a); *Lipsky*, 460 S.W.3d at 590 (defining a "prima facie case" as "evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted").

Importantly, "Rule 202 depositions are not now and never have been intended for routine use. There are practical as well as due process problems with demanding discovery from someone before telling them what the issues are*." Jorden*, 249 S.W.3d at 423. As a result, courts are directed to "strictly limit and carefully supervise pre-suit discovery to prevent abuse of [Rule 202]." *In re Wolfe*, 341 S.W.3d 932, 933 (Tex. 2011) (orig. proceeding). Moreover, because Rule 202 pre-suit discovery is merely in aid of an anticipated suit, as opposed to an end within itself, Rule 202 "is not a license for forced interrogations" and may not be used to circumvent discovery limitations that would govern the anticipated suit. *Id.*; *see also Jorden*, 249 S.W.3d at 418 (holding that Rule 202 may not be used to obtain discovery in anticipated health care liability suits before the Rule 202 petitioner serves expert reports in accordance with requirements of Texas Civil Practice and Remedies Code § 74.351).

30

In their amended Rule 202 Petition, the Attorneys pled both that they anticipated filing a defamation lawsuit against the Court Watchers and that they sought to investigate potential claims. Thus, they needed to provide clear and specific evidence establishing prima facia proof either that "(1) allowing [them] to take the requested deposition[s] [would] prevent a failure or delay of justice in an anticipated suit[;] or (2) the likely benefit of allowing [them] to take the requested deposition[s] to investigate a potential claim outweigh[ed] the burden or expense of the procedure." Tex. R. Civ. P. 202.4(a). The Texas Supreme Court has expressly held these findings **may not be implied** from support in the record. *In re Does*, 337 S.W.3d 862, 865 (Tex. 2011) (orig. proceeding).

A petitioner seeking pre-suit discovery under Rule 202 must present evidence to meet its burden to establish the facts necessary to obtain such discovery. *See In re East*, 476 S.W.3d 61, 68 (Tex. App.—Corpus Christi 2014, orig. proceeding) ("The law is clear that a petitioner seeking a presuit deposition must present evidence to meet its burden to establish the facts necessary to obtain the deposition."); *see also Love v. Moreland*, 280 S.W.3d 334, 336 n.3 (Tex. App.—Amarillo 2008, no pet.); *In re Hochheim Prairie Farm Mut. Ins. Ass'n*, 115 S.W.3d 793, 796 (Tex. App.—Beaumont 2003, orig. proceeding). Generally, a Rule 202 petitioner may not rely upon its verified pleading to prove the facts asserted in its petition. *In re Pickrell*, No. 10-17-00091-CV, 2017 WL 1452851, at *4 (Tex. App.—Waco Apr. 19, 2017, orig. proceeding) (mem. op.); *see also In re Noriega*, No. 05-14-00307-CV, 2014 WL 1415109, at *2 (Tex. App.—Dallas Mar.

31

28, 2014, orig. proceeding) (mem. op.) ("[E]ven if real party had been able to overcome relator's objection to the verification on the petition that it was not based on personal knowledge of real party's counsel, the verified petition would not have been admissible evidence in support of the Rule 202 petition."); *In re Rockafellow*, No. 07-11-00066-CV, 2011 WL 2848638, at *4 (Tex. App.—Amarillo July 19, 2011, orig. proceeding) (holding that the trial court abused its discretion in ordering pre-suit depositions because neither the verified petition nor counsel's arguments constituted evidence in support of the Rule 202 petition); *In re Contractor's Supplies, Inc.*, No. 12-09-00231-CV, 2009 WL 2488374, at *5 (Tex. App.—Tyler Aug. 17, 2009, orig. proceeding) (mem. op.) (holding that the Rule 202 petition itself is not evidence for purposes of supporting the required findings).

As a result, because the relevant "claim" in this case for purposes of Section 27.005 of the TCPA is the request for pre-suit discovery under Rule 202, the question arises whether we also need to reconcile Rule 202's requirement that the movant present evidence in support of the Rule 202 Petition, which generally does not include pleadings, with the TCPA's directive to consider both "pleadings" and evidence in resolving the Motions to Dismiss. *See* Tex. Civ. Prac. & Rem. Code § 27.006(a). However, this is not a question that we need to resolve here, because although the Attorneys' Rule 202 Petition and their response to the Motions to Dismiss with attached affidavit and exhibits comprise over 200 pages, they do not contain sufficiently detailed recitations of the facts, much less clear and specific evidence, demonstrating the need for the Attorneys to obtain pre-suit discovery.

32

Thus, whether we consider the Rule 202 Petition, the responses to the Motions to Dismiss and the attached evidence, or whether we look only at the Attorneys' evidence, they failed to meet their burden.

For example, the Rule 202 Petition merely states that

PPC, each member of its board of directors, and/or individual members of that organization and its social media contributors and/or commentators have libeled and/or slandered the Petitioners. In the alternative, Petitioners seek the investigation of potential claims that may be pursued by the Petitioners, or any of them for any and all claims against these potential defendants that may arise as the product of discovery.

The Attorneys' response to the Motions to Dismiss is equally vague, providing only that the Rule 202 Petition "requests such depositions and production to investigate potential claims by [the Attorneys] as well as to investigate potential parties." These conclusory statements merely track the words of Rule 202. In fact, the Attorneys fail to include any explanatory facts or supporting evidence showing **why** allowing the pre-suit discovery would prevent an alleged failure or delay of justice in an anticipated suit, or **why** the benefit of allowing the pre-suit discovery outweighs the burden or expense of the procedure.

It is well settled that a Rule 202 petition that "merely tracks the language of Rule 202 in averring the necessity of a pre-suit deposition, without including any explanatory facts, is insufficient to meet the petitioner's burden." *East*, 476 S.W.3d at 69; *see also Does*, 337 S.W.3d at 865 (noting that the petitioner "made no effort to present the trial court with a basis for the [Rule 202] findings" where the allegations in its petition and motion to compel were "sketchy"); *In re Reassure*

33

*Am. Life Ins. Co.*, 421 S.W.3d 165, 173 (Tex. App.—Corpus Christi 2013, orig. proceeding) (stating that a Rule 202 petition must do more than reiterate the language of the rule and must include explanatory facts). Moreover, a Rule 202 petition cannot be supported by the articulation of a "vague notion" that evidence will become unavailable by the passing of time without producing evidence to support such a claim. *See Hochheim Prairie Farm Mut. Ins. Ass'n,* 115 S.W.3d at 795–96; *In re Dall. Cty. Hosp. Dist.*, No. 05-14-00249-CV, 2014 WL 1407415, at *3 (Tex. App.—Dallas Apr. 1, 2014, orig. proceeding) (mem. op.). Merely stating that the discovery is necessary to identify "the required and correct parties without further explanation and evidence," it is also insufficient to support a request for pre-suit discovery. *East*, 476 S.W.3d at 69 (citing *Hochheim Prairie Farm Mut. Ins. Ass'n.*, 115 S.W.3d at 795–96).

Further, while the Attorneys' evidence of the alleged defamatory statements attached to their response to the Motions to Dismiss and the DeAngelis affidavit (in which she stated generally that such statements are false, tended to injure her reputation and profession, and caused her embarrassment and stress) are informative, they provide absolutely no evidence of the ultimate question necessary to determine whether the Rule 202 Petition should be granted—why the requested pre-suit discovery "prevent[ed] a failure or delay of justice in an anticipated suit" or why the benefit of "the requested deposition[s] . . . outweigh[ed] the burden or expense of the procedure." Tex. R. Civ. P. 202.4(a). Instead, this evidence suggests that the requested pre-suit discovery is unnecessary because

34

the Attorneys already have more than enough information to file an action for defamation without resorting to Rule 202. *See In re Wolfe*, 341 S.W.3d at 933 (cautioning that Rule 202 is "is not an end in itself," but rather "is in aid of a suit which is anticipated" and "ancillary to the anticipated suit") (citations and internal quotation marks omitted).[10] Put simply, the Attorneys "nowhere explain[]

---

[10]Although not fully briefed or explored by the parties, we are particularly concerned with the Attorneys' request to "unmask" anonymous or partially anonymous internet and social media users through the mechanism of a Rule 202 petition. Instructive is *Packingham v. North Carolina*, 137 S. Ct. 1730, 1735–36 (2017), where the Supreme Court took one of its first looks at the relationship between the First Amendment and the Internet. There, the Court overturned a North Carolina statute that effectively denied a registered sex offender internet access, acknowledging that the "most important place" for the exchange of views today is the "vast democratic forums of the Internet in general . . . and social media in particular." *Id.* at 1735 (citations and internal quotation marks omitted). It follows that internet postings or comments on matters of public concern can be just as important as any other form of First Amendment communication. *See Doe v. 2TheMart.com, Inc.*, 140 F. Supp. 2d 1088, 1092–93 (W.D. Wash. 2001) (noting that the exchange of ideas on the internet is "driven in large part by the ability of Internet users to communicate anonymously").

Further, "[a]nonymous pamphlets, leaflets, brochures and even books have played an important role in the progress of mankind." *Talley v. California*, 362 U.S. 60, 64, 80 S. Ct. 536, 538 (1960); *see also McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341 n.4, 115 S. Ct. 1511, 1516 n.4 (1995) (giving examples of famous literary and historical figures such as Mark Twain and the authors of the Federalist Papers who relied on anonymity to give voice to issues of public concern). *See generally, e.g.,* THE FEDERALIST NOS. 1-85 (Alexander Hamilton, James Madison, & John Jay) (writing as "Publius"); ALEXANDER HAMILTON, PACIFICUS NO. 1 (1793), JAMES MADISON, HELVIDIUS NO. 3 (1793), *reprinted in* THE PACIFICUS-HELVIDIUS DEBATES of 1793-1794: TOWARD THE COMPLETION OF THE AMERICAN FOUNDING 13 (Morton J. Frisch ed., 2007). "Accordingly, an author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom of speech protected by the First Amendment." *McIntyre*, 514 U.S. at 342, 115 S. Ct. at 1516.

why the deposition[s] of the [Court Watchers] must occur in a Rule 202 proceeding before, and not after, [the Attorneys] sue[] [the Court Watchers]." *In re Hanover Ins. Co.*, No. 01–13–01066–CV, 2014 WL 7474203, at *3 (Tex. App.—Houston [1st Dist.] Dec. 30, 2014, orig. proceeding) (mem. op.).

Finally, not only is the Attorneys' explanation regarding their need for pre-suit discovery vague and conclusory, the bevy of document requests included in the Attorneys' Rule 202 Petition gives further credence that the Attorneys have not shown by clear and specific evidence that they are entitled to pre-suit discovery. The broad nature of the document requests indicates to this court that the Rule

---

The speech involved here that these allegedly masked persons (for on Facebook one often associates their real name and a photograph of their face with their profile) engaged in was unquestionably of public concern. *See supra* at pp. 26–28. The fact that these comments were made online does not lessen their First Amendment value. *See Doe v. Cahill*, 884 A.2d 451, 456 (Del. 2005) ("Anonymous Internet speech in blogs or chat rooms in some instances can become the modern equivalent of political pamphleteering."). *See generally Packingham*, 137 S. Ct. 1735. The fact that these persons may have been masked does not deprive their statements of First Amendment protections. *See generally McIntyre*, 514 U.S. at 341–43. Anonymity regarding speech touching on matters of public concern is only rarely stripped and typically only after a contentious suit. *See, e.g., In re Grand Jury Subpoena No. 11116275*, 846 F. Supp. 2d 1, 4–8 (D.D.C. 2012) (discussing the limited situations where it is appropriate to unmask an anonymous defendant through a subpoena from a grand jury in a case where an anonymous defendant repeatedly tweeted violent, obscene, and disturbing comments directed at then-presidential candidate Michelle Bachman). To attempt to do so through the mechanism of pre-suit discovery seems to tread on very dangerous ground, arguably circumventing the very purposes of anti-SLAPP legislation and long-established First Amendment protections. *See supra* at pp. 19-25; *see also Music Grp. Macao Commercial Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 983 (N.D. Cal. 2015) (denying motion to enforce non-party subpoena seeking to compel Twitter to disclose anonymous website posters).

202 Petition was not crafted to "prevent a failure or delay of justice in an anticipated suit" or that the benefit of allowing the discovery "outweighs the burden or expense of the procedure." Tex. R. Civ. P. 202.4. Indeed, the document requests appear so draconian that they would not be allowed in an actual lawsuit against the Court Watchers, and the time and expense involved in responding to the requests would be significant. Moreover, the request for the production of documents in the Rule 202 Petition is itself improper. *See In re Akzo Nobel Chem., Inc.*, 24 S.W.3d 919, 921 (Tex. App.—Beaumont 2000, orig. proceeding) (holding that Rule 202 does not expressly authorize any form of discovery other than depositions.); *see also Pickrell*, 2017 WL 1452851, at *6 (holding trial court abused its discretion by allowing production of documents under Rule 202).

Just as Rule 202 cannot be used as a tool to circumvent the free speech protections of the TCPA, impermissible pre-suit document discovery should not be used as a tool to stifle or quash speech on matters of public concern, however much we disagree or dislike such speech, without the filing of a formal lawsuit. *Cf. Pacifica Found.*, 438 U.S. at 745–46, 98 S. Ct. at 3038; Letter from Thomas Jefferson to Elbridge Gerry (Jan. 26, 1799), *in* 30 THE PAPERS OF THOMAS JEFFERSON, 645–52 (Barbara B. Oberg ed., 2003) ("I am . . . against all violations of the Constitution to silence by force and not by reason the complaints or criticisms, just or unjust, of our citizens against the conduct of their agents."); *see also Rehak Creative Servs., Inc. v. Witt*, 404 S.W.3d 716, 733 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) ("The scope of free speech protection does

not depend on the legal theory asserted by an inventive plaintiff.") (citations and internal quotation marks omitted), *disapproved on other grounds by In re Lipsky*, 460 S.W.3d at 587, 591.

We conclude that the Attorneys have not put forth clear and specific evidence that would entitle them to pre-suit discovery under Rule 202 of the Texas Rules of Civil Procedure. We overrule this part of their first issue.

## III. The Motions to Dismiss Were Not Overruled By Operation of Law.

Also under their first issue, the Attorneys alternatively argue that the Motions to Dismiss were overruled by operation of law, making the trial court's subsequent signing of the Final Judgment erroneous. We disagree.

Under the TCPA, trial court must "rule on a motion" to dismiss no later than the thirtieth day following the date of the hearing on the motion. Tex. Civ. Prac. & Rem. Code Ann. § 27.005(a). If the court does not "rule on [the] motion" within that time, "the motion is considered to have been denied by operation of law." *Id.* § 27.008(a).

Here, the trial court held a hearing on the Court Watchers' Motions to Dismiss on February 11, 2016 and orally granted the motions. At the hearing, the trial court expressly reserved for a later date a decision on an award of attorney's fees and sanctions. On February 12, 2016, the trial court signed two orders granting the Motions to Dismiss. In March 2016, the Court Watchers renewed their request for attorney's fees and sanctions, but the Attorneys objected, contending that the trial court had lost plenary power to award the fees because more than

thirty days had passed since it had signed the orders granting the Motions to Dismiss. After holding a hearing on the request for attorney's fees and sanctions, on June 1, 2016, the trial court signed the Final Judgment dismissing the Rule 202 Petition and awarding attorney's fees and sanctions to the Court Watchers.

The Attorneys contend that if the trial court dismissed the case on February 12, 2016, the trial court's plenary power would have ended mid-March. Therefore, because the trial court nevertheless continued exercising its jurisdiction over the case through June 2016, the trial court apparently did not intend to dismiss the case on February 12. And because the trial court did not dismiss the case on February 12, the Motions to Dismiss were not ruled on and were therefore overruled by operation of law thirty days after the hearing on the motions—on March 12, 2016. Accordingly, they argue, the trial court's later dismissal of the case was erroneous.

The Attorneys' argument is thus that Section 27.005(a) of the TCPA required the trial court to **completely** resolve all matters related to the Motions to Dismiss— the dismissal decision, the request for attorney's fees, and the request for sanctions—within thirty days of the dismissal hearing. *See id.* § 27.005(a). The Attorneys' proposed interpretation of Section 27.005(a) improperly creates ambiguities where there are none and impermissibly requires us to disregard the plain meaning of the words of the statute. *See Sturges v. Crowninshield*, 17 U.S. (4 Wheat) 122, 202 (1819) ("It would be dangerous in the extreme, to infer from extrinsic circumstances, that a case for which the words of an instrument expressly

39

provide, shall be exempted from its operation."). Section 27.005(a) requires the trial court to rule on a motion to dismiss within thirty days of the hearing, and here, the trial court **did** rule on the Court Watchers' Motions to Dismiss within that time period, both orally and by signing orders granting the motions. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(a). We simply cannot conclude, as the Attorneys urge, that Section 27.008(a) operated to deny the Motions to Dismiss by operation of law even though the trial court had expressly granted them. *See id.* § 27.008(a); *cf. Trane US Inc., v. Sublett*, 501 S.W.3d 783, 785–88 (Tex. App.—Amarillo 2016, no pet.) (holding that court of appeals had no jurisdiction over appeal of TCPA dismissal order that did not resolve pending claim for attorney's fees and sanctions). And nothing within the TCPA expressly prohibits the trial court from timely ruling on the request for dismissal and later resolving issues relating to statutorily required attorney's fees and sanctions, as the trial court did here. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.009(a) (stating that if a trial court orders dismissal, the court "shall award" attorney's fees and sanctions to the moving party); *see also Kinney v. BCG Attorney Search, Inc.*, No. 03-12-00579-CV, 2014 WL 1432012, at *7 (Tex. App.—Austin Apr. 11, 2014, pet. denied) (mem. op.) (holding that a trial court complied with Section 27.005(a)'s requirement to "rule" within thirty days of the hearing when it rendered its ruling within thirty days and signed an order after the thirty-day period); *cf. U.S. Fleet Servs. Inc. v. City of Fort Worth*, 141 F. Supp. 2d 631, 644 (N.D. Tex. 2001) (Mahon, J.) (refusing to engage

40

in an exercise of "legal jingoism" requiring the court to insert words into a law or rule to arrive at a particular party's interpretation).

We affirm the trial court's dismissal of the Rule 202 Petition pursuant to the provisions of the TCPA, and we overrule the Attorneys' first issue in its entirety.

## IV. The Trial Court Had Jurisdiction to Render the Final Judgment.

Under their second issue, the Attorneys argue that the trial court's dismissal orders became final on February 17, 2016, and the trial court therefore had no jurisdiction to render Final Judgment awarding attorney's fees and sanctions. For this argument, the Attorneys rely on the trial court's following statements at the hearing:

> But I think that this is an interesting question as to whether [a TCPA motion to dismiss] should shut down a 202 suit. I'm going to say it does and I'm going to dismiss the case. However, that obviously is not going to be a final, I guess, decision until Ms. Tribunella [a person named in the Rule 202 petition who had not yet been served] and whoever else is added to the suit. I don't think this applies to Mr. Hutto [another person named in the Rule 202 petition whose attorney had not been given proper notice of the hearing and was therefore not present] either.

The Attorneys contend that this language indicates a ruling by the trial court that, upon the trial court's February 22 order granting a nonsuit of Tribunella and Hutto, the February 12 dismissal orders become final. Accordingly, they argue, the appellate timetables started running by February 22, the trial court therefore lost plenary power mid-March 2016, and its subsequent Final Judgment was void. We reject this argument as well.

41

We agree that the relied-on language indicates that the trial court recognized that its oral rendition was not a final judgment, but the trial court's language at the hearing does not have the significance the Attorneys give to it. The February 12, 2016 orders did not resolve the Court Watchers' pending claims for attorney's fees and sanctions or contain express language indicating finality, so neither order qualified as a final, appealable judgment, despite the subsequent nonsuit. *See Farm Bureau Cty. Mut. Ins. Co. v. Rogers*, 455 S.W.3d 161, 163–64 (Tex. 2015); *see also Fuentes v. Zaragoza*, No. 01-16-00251-CV, 2017 WL 976079, at *2 (Tex. App.—Houston [1st Dist.] Mar. 14, 2017, no pet.) (mem. op.) ("The outstanding claim for attorney's fees prevented the judgment from becoming final."). Because the February 12, 2016 dismissal orders met Section 27.005(a)'s requirement but did not comprise a final judgment, the request for attorney's fees and sanctions remained pending, and the trial court had plenary power to sign the Final Judgment on June 1, 2016.[11]

---

[11]In one sentence in the summary of their argument, the Attorneys assert that because the trial court had no jurisdiction to render the Final Judgment on June 1, 2016, we have no jurisdiction over "this appeal." Because they do not elaborate there or elsewhere in their brief, we do not know on what basis the Attorneys conclude that the trial court's lack of jurisdiction to render the Final Judgment deprives this court of jurisdiction over their own appeal, given that the Attorneys do not, for purposes of this issue, contend that *no* final judgment exists. *See CMH Homes v. Perez*, 340 S.W.3d 444, 447 (Tex. 2011) ("[A]ppellate courts generally only have jurisdiction over final judgments."). Nor do they argue that the notice of appeal was untimely filed. *See* Tex. R. App. P. 25.1 (providing that an appeal is perfected when the notice of appeal is filed and that the filing of a notice of appeal invokes the appellate court's jurisdiction). To the extent that their argument could be based on either of those grounds, and likewise if the Attorneys

We overrule this part of the Attorneys' second issue.

## V. Because the Trial Court Properly Dismissed the Case, Attorney's Fees Were Mandated.

Also in their second issue, the Attorneys contend that the trial court erred by awarding attorney's fees and sanctions to the Court Watchers because the "trial court should not have dismissed the case . . . and thus could not have awarded fees and sanctions as part of a dismissal."

The TCPA mandates that if a trial court dismisses a legal action under the statute, it shall award the moving party "(1) court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require; and (2) sanctions against the party who brought the legal action." Tex. Civ. Prac. & Rem. Code Ann. § 27.009(a). The Texas Supreme Court has held that "[b]ased on [Section 27.009's] language and punctuation, . . . the TCPA requires an award of 'reasonable attorney's fees'" to the successful movant. *Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016). This court has likewise held that when a legal action is dismissed under the TCPA, an award of sanctions against the party who brought the action is also mandatory under Section 27.009. *Rich*, 535 S.W.3d at 612–14; *see Serafine v. Blunt*, No. 03-16-00131-CV, 2017 WL 2224528, at *7 (Tex. App.—Austin May 19, 2017, pet. denied)

---

are arguing that this court has no jurisdiction over *the Court Watchers'* appeal, we overrule it. As we hold, the trial court had jurisdiction to render the Final Judgment. Further, the Attorneys and the Court Watchers timely filed their notices of appeal from the Final Judgment.

43

(mem. op.) ("[W]e determine that the trial court abused its discretion in failing to award any amount of sanctions under the TCPA, as the statutory language is mandatory on this issue as well."). Therefore, because we must affirm the trial court's dismissal of the Rule 202 Petition, we also overrule the Attorneys' contention that the trial court should not have awarded attorney's fees and sanctions to the Court Watchers. *See Sullivan*, 488 S.W.3d at 299. We overrule the Attorneys' second issue in its entirety.

## VI. The Trial Court Could Not Consider Equity and Justice in its Attorney's Fees Award.

On cross-appeal, the Court Watchers contend that the trial court erred by cutting their requested attorney's fees by half for reasons of "justice and equity," even though the trial court also determined that their requested fees were reasonable.[12] In support, the Court Watchers direct us to the Texas Supreme Court's decision in *Sullivan*, 488 S.W.3d at 299, for the proposition that parties who obtain dismissal under the TCPA are entitled to the full measure of their requested attorney's fees.

On May 27, 2016, the same date that the Texas Supreme Court's mandate issued in *Sullivan*, the trial court in this case signed an order awarding $2,000 in attorney's fees to Carless, labeling the amount a "reasonable and necessary

---

[12]We received two cross-appellant briefs from the Court Watchers: one from Carless, and one from the remaining Court Watchers. Both briefs complained of the trial court's halving the requested attorney's fees.

44

attorney's fee that would be equitable and just to award" to a successful moving party under Section 27.009(a) of the TCPA. In the same order, the trial court also ordered "a reasonable [and] necessary attorney['s] fee" of $5,747.50 to the remaining Court Watchers. Contemporaneously with the order, the trial court issued a letter ruling to explain the basis of its ruling, stating, "In considering the Attorney's Fees requested by Defendants ($11,495 by Mr. Westfall, and $4,000 by Mr. Smith, for a total of $15,495), I find that each amount charged by the attorneys, ($250/hour by Mr. Westfall and $400/hour by Mr. Smith) are reasonable rates." The trial court explained that the amounts and number of hours spent were reasonable but that it was reducing "the combined legal fees *and* expenses by one-half" (or $7,747.50) because the suit filed was "merely" a 202 suit and not an actual lawsuit such that this reduction was "appropriate to fulfill the statute's intent" and was "*consistent with justice and equity*." [Emphasis added.]

In *Sullivan*, the Texas Supreme Court held that the justice-and-equity modifier in Section 27.009(a) applies to the award of "other expenses," not to the award of attorney's fees under the TCPA. *Sullivan*, 488 S.W.3d at 299; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 27.009(a)(1) (requiring an award of court costs, reasonable attorney's fees, "and other expenses incurred in defending against the legal action as justice and equity may require"). However, the Texas Supreme Court also held that an attorney's fee award under Section 27.009(a) must still be "reasonable," and it defined "reasonable" as "not excessive or extreme, but rather moderate or fair." *Sullivan*, 488 S.W.3 at 299 (quoting *Garcia*

45

*v. Gomez,* 319 S.W.3d 638, 642 (Tex. 2010)). The Court further held that the determination of what is reasonable "rests within the court's sound discretion." *Id.*; *see McGibney v. Rauhauser*, No. 02-16-00244-CV, 2018 WL 1866080, at *2 (Tex. App.—Fort Worth Apr. 19, 2018, no pet. h.) (observing that a trial court does not abuse its discretion as long as its action is not arbitrary or unreasonable). The Texas Supreme Court remanded the case for the trial court to apply the correct standard to the parties' competing affidavits on attorney's fees and other evidence to determine the "required reasonable amount." *Sullivan*, 488 S.W.3d at 299; *see also McGibney*, 2018 WL 1866080, at *3–7 (applying *Sullivan*, concluding that the trial court abused its discretion in determining the "reasonable" amount based on insufficient evidence to support the fees, and remanding for a reconsideration of the amount of attorney's fees).

Accordingly, we sustain the Court Watchers' issue in part because the trial court erred by including considerations of equity and justice in determining the amount of a reasonable attorney's fee award under the TCPA, instead of restricting the justice-and-equity modifier to "other expenses." *See Sullivan*, 488 S.W.3d at 298–99; *McGibney*, 2018 WL 1866080, at *2. We will not, however, usurp the trial court's discretion by determining whether the amount of attorney's fees requested was "reasonable." Rather, applying *Sullivan,* we follow the Texas Supreme Court's lead and remand the issue to the trial court to apply the correct standard. *See Sullivan*, 488 S.W.3d at 299; *see also Kinsel v. Lindsey*, 526 S.W.3d 411, 427 (Tex. 2017) (observing that the determination of reasonable attorney's fees "is

46

an issue generally left to the trier of fact"); *McGibney*, 2018 WL 1886080, at *18 ("[W]e sustain the portion of the Appellants' second issue with regard to the *amount* of the attorney's fees awarded by the trial court and remand this portion of the case to the trial court once again to conduct a hearing on attorney's fees consistent with this opinion."). We therefore overrule the part of the Court Watchers' issue requesting that this court render an award for the full amount of the requested attorney's fees.[13]

## VII.  **Carless is Entitled to her Reasonable Appellate Attorney's Fees.**

Carless additionally complains of the trial court's failure to award her appellate attorney's fees. She argues that when trial attorney's fees are mandatory, appellate attorney's fees are also mandatory when proof of reasonable fees is presented. The Attorneys did not file a brief responsive to this issue.

In support of her claim, Carless cites cases applying the well-established rule that when an award of trial attorney's fees is mandatory under Texas Civil Practice and Remedies Code Section 38.001, an award of appellate attorney's fees is also mandatory. Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (West 2015); *see Ventling v. Johnson*, 466 S.W.3d 143, 154 (Tex. 2015) ("If trial attorney's fees are mandatory under section 38.001, then appellate attorney's fees are also

---

[13]In reaching this holding, we make no determination as to whether the amount of attorney's fees requested by the Court Watchers were reasonable or whether the trial court was correct in awarding half of their requested attorney's fees. We only hold that the trial court employed the wrong standard in determining the mandatory award of attorney's fees.

mandatory when proof of reasonable fees is presented."); *see also DaimlerChrysler Motors Co., LLC v. Manuel*, 362 S.W.3d 160, 198–99 (Tex. App.—Fort Worth 2012, no pet.) (same); *End Users, Inc. v. Sys. Supply For End Users, Inc.*, No. 14–06–00833–CV, 2007 WL 2790379, at *6 (Tex. App. —Houston [14th Dist.] Sept. 27, 2007, no pet.) (mem. op.) (same). Carless's cited cases do not directly control our holding, but they are persuasive. Indeed, Texas courts have frequently held that statutes providing for the award of attorney's fees also included the award of appellate attorney's fees. *See, e.g.*, *Meece v. Moerbe*, 631 S.W.2d 729, 730 (Tex. 1982) (holding that where successful plaintiff was entitled to attorney's fees under the former usury statute, appellate attorney's fees were available in the bill of review proceeding because they would have been available in an appeal of the underlying case); *Int'l Sec. Life Ins. v. Spray*, 468 S.W.2d 347, 349 (Tex. 1971) (concluding former Texas Insurance Code Article 3.62 providing for the recovery of "reasonable attorney fees for the prosecution and collection of" a loss under that article included appellate attorney's fees and holding that the "purpose of the statute would be defeated if only the fees incurred in the trial court were recoverable and the fees incurred during the appeal remained the expense of the policyholder"); *Mecey v. Seggern*, 596 S.W.2d 924, 928 n.1, 930 (Tex. Civ. App. —Austin 1980, writ ref'd n.r.e.) (citing *Spray* and the former usury statute providing for recovery of "reasonable attorney fees fixed by the court" to hold "that there is provision in the usury statutes for appellate attorney's fees"); *Cent. Adjustment Bureau, Inc. v. Gonzales*, 528 S.W.2d 314,

48

316–17 (Tex. Civ. App.—San Antonio 1975, no writ) (holding that because debt collection statute "authorizes an award of attorneys' fees, 'reasonable in relation to the amount of work expended and costs,' to a person who successfully maintains an action for actual damages," the statute authorized "a recovery of reasonable attorneys' fees for all work expended, including that on appeal, if such should be necessary"); *see also, e.g., Lowe v. Farm Credit Bank of Texas*, 2 S.W.3d 293, 299 (Tex. App.—San Antonio 1999, pet. denied) (stating that the focus of *Meece* is "whether the statute authorizing the recovery of attorney's fees draws a distinction between an award of attorney's fees at trial and an award of attorney's fees on appeal. . . . In the absence of such a distinction, attorney's fees are recoverable in a bill of review proceeding to the same extent as attorney's fees were recoverable at trial."). While not every statutory provision providing for the recovery of attorney's fees also necessarily requires an award of appellate attorney's fees, *see Interest of R.R.*, No. 02-15-00032-CV, 2017 WL 632897, at *12 (Tex. App.—Fort Worth Feb. 16, 2017, pet. pending) (mem. op.), we agree that the TCPA requires an award of reasonable appellate attorney's fees to Carless.

As discussed herein, when a trial court dismisses a legal action under the TCPA, Section 27.009 requires the award of reasonable attorney's fees and it does not distinguish between the award of trial and appellate attorney's fees. Tex. Civ. Prac. & Rem. Code Ann. § 27.009; *see also Sullivan*, 488 S.W.3d at 299. Recently, the First Court of Appeals explicitly held that Section 27.009 mandates the award

49

of appellate attorney's fees when proof of reasonable fees is presented. *G. Wesley Urquhart, P.C. v. Calkins*, No. 01-17-00256-CV, 2018 WL 3352919, at *5 (Tex. App.—Houston [1st Dist.], Jul. 10, 2018, no pet. h.) (mem. op.).[14] Further, other decisions have implicitly recognized the propriety of appellate attorney's fee awards under the TCPA. *See State ex rel. Best v. Harper*, No. 16-0647, 2018 WL 3207125, at *9 (Tex. June 29, 2018) (holding sovereign immunity does not protect the state from appellate fees and costs awarded to prevailing party under the TCPA); *McGibney*, 2018 WL 1866080, at *9 (overturning a conditional award of appellate attorney's fees under the TCPA because the condition rewarded the unsuccessful party on appeal instead of the prevailing party); *Sullivan v. Abraham*, No. 07-17-00125-CV, 2018 WL 845615, at *10 (Tex. App.—Amarillo Feb. 13, 2018, no pet.) (remanding for redetermination of reasonable attorney's fees from case's inception to remand by Texas Supreme Court and

---

[14]Examining Section 27.009, the *Urquhart* court held that

> because the TCPA mandates an award of reasonable fees, because appellant offered some evidence as to what a reasonable conditional appellate fee might be, and because the record raises no potential that the appellate work would be included in a contingent arrangement (or some other arrangement) such that no fees would be incurred, the trial court lacked discretion to award no contingent appellate fees.

*Urquhart*, 2018 3352919, at *5.

noting that trial court is not restricted "from considering or awarding . . . conditional attorney's fees should further appeal from the redetermination be necessary").

Here, Carless's counsel testified:

- He believed an appeal to this court would require 50 hours at the reasonable hourly rate of $400, and thus "a reasonable and necessary attorney fee on an appeal" to this court conditional on Carless's success would be $20,000;

- He believed that filing a petition for review with the Supreme Court of Texas would require at least 20 hours at the reasonable hourly rate of $400, and thus "[a] reasonable and necessary attorney fee for a petition for review filed with the Texas Supreme Court if Carless prevailed would be $8,000"; and

- Filing a brief at the Supreme Court of Texas would require another 50 hours at the reasonable hourly rate of $400, and thus "a reasonable and necessary attorney fee to handle full briefing if requested by the Texas Supreme Court and if Carless prevailed would be $20,000."

The Attorneys declined to cross-examine the witness and did not offer controverting evidence on anticipated appellate fees. Uncontroverted testimony from an interested party will establish the reasonableness of attorney's fees sought if uncontroverted; clear, direct, and positive; and free of internal contradictions. *See McMillin v. State Farm Lloyds*, 180 S.W.3d 183, 210 (Tex. App.—Austin 2005, pet. denied) (citing *Lofton v. Tex. Brine Corp.*, 777 S.W.2d 384, 386 (Tex. 1989)). However, the trial court "ma[d]e no findings for contingent appellate fees in the future" despite her award of attorney's fees at the trial level.

Examining the plain language of Section 27.009 and the caselaw cited herein, we hold that Carless is entitled to reasonable appellate attorney's fees.

51

Therefore, we sustain this part of Carless's issue, and we remand to the trial court a determination of the amount of reasonable appellate attorney's fees for Carless.

## CONCLUSION

Having overruled both of the Attorneys' issues and having sustained in part and overruled in part the Court Watchers' issue in their cross-appeals, we affirm the trial court's "Final Judgment Dismissing Cause Under the Texas Citizens' Participation Act" as to the granting of the Motions to Dismiss, but we reverse that judgment as to the amount of trial attorney's fees awarded to the Court Watchers and as to the failure to award Carless reasonable appellate attorney's fees. We remand this case to the trial court for further proceedings consistent with this opinion.

/s/ Mark T. Pittman
MARK T. PITTMAN
JUSTICE

PANEL:  MEIER; GABRIEL and PITTMAN, JJ.

GABRIEL, J., concurs without opinion.

DELIVERED: August 2, 2018