**Opinion issued December 3, 2020**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-20-00148-CV**

———————————

**JENNIFER MORRIS, Appellant**

**V.**

**DAVID PATRICK DANIEL, JR., Appellee**

**On Appeal from the 61st District Court**
**Harris County, Texas**
**Trial Court Case No. 2019-78634**

## O P I N I O N

Jennifer Morris appeals from the trial court's order denying her motion to dismiss David Patrick Daniel, Jr.'s suit under the Texas Citizens Participation Act. *See* TEX. CIV. PRAC. & REM. CODE §§ 27.001–.011 (TCPA or Act); *id.* at § 51.014(a)(12) (providing right to interlocutory appeal from order denying motion

to dismiss made under Act). Because Morris failed to meet her initial burden to show Daniel's suit is based on or in response to her exercise of the rights of free speech or association, we affirm the trial court's order denying her motion to dismiss.

## BACKGROUND

Morris and Daniel are divorced. They settled a dispute as to the custody of their child via a mediated settlement agreement. The settlement agreement contained a confidentiality clause barring Morris and Daniel from disclosing information relating to the custody dispute as well as other litigation between them.

In accord with their settlement, the trial court presiding over the custody dispute entered an agreed order as to the custody of their child. The order incorporated the settlement agreement's confidentiality clause. The order specified that the confidentiality clause does not apply to the order itself and authorized the parties to disclose the order to effect or enforce it.

Daniel later sued Morris for breach of contract, alleging that she breached their settlement agreement by disclosing its terms to third parties in violation of the confidentiality clause. Daniel sought the return of the amount he paid Morris in connection with the settlement agreement and a declaration voiding the agreement.

Morris filed a special exception objecting that Daniel did not state any facts as to how she had breached the confidentiality clause. She also moved to dismiss Daniel's suit under the Citizens Participation Act arguing that Daniel's suit violated

her right of free speech and right of association because any communication she made or activity she engaged in concerned a matter of public concern.

In his response, Daniel claimed Morris had violated the confidentiality clause in two ways. First, he asserted she gave a copy of the settlement agreement to a third party in an unrelated out-of-state lawsuit in which Daniel's new wife was a litigant. Second, Daniel asserted Morris misrepresented the terms of the settlement agreement in a letter she wrote to their child's school. He then argued that these breaches fell outside the Act's scope.

Morris replied contending that Daniel had not filed any evidence supporting either of the breaches he asserted. Daniel then filed a copy of a letter sent to the school by Morris's lawyer.

The trial court denied Morris's motion to dismiss.

Morris appeals.

## DISCUSSION

### Daniel's Motion to Dismiss Appeal

More than five months after Morris filed her notice of appeal, Daniel filed a notice of nonsuit in the trial court, which entered an order granting the nonsuit. Daniel contends his nonsuit moots the appeal and requests that we dismiss it.

Morris opposes dismissal of the appeal. She argues the trial court erred in denying her motion to dismiss the suit under the Citizens Participation Act and that her entitlement to attorney's fees under the Act prevents the appeal from being moot.

As an initial matter, it is questionable whether Daniel could have filed an effective notice of nonsuit in the trial court after Morris filed her notice of appeal. By statute, when a party appeals from the denial of a motion to dismiss under the Act, the appeal stays all proceedings in the trial court until the appeal is resolved. TEX. CIV. PRAC. & REM. CODE § 51.014(b). The Supreme Court previously has held that a nonsuit filed during the pendency of an interlocutory appeal is effective when filed. *See Univ. of Tex. Med. Branch at Galveston v. Estate of Blackmon*, 195 S.W.3d 98, 100 (Tex. 2006) (per curiam) (appeal from denial of jurisdictional plea). In *Blackmon*, however, the Court did not consider the effect of the statutory stay of all trial-court proceedings because it was inapplicable.[1] *See id.* at 100–01. More recently, the Court has indicated it is possible the statutory stay precludes a party from filing a notice of nonsuit in the trial court. *See Morath v. Lewis*, 601 S.W.3d

---

[1] The Tenth Court's docket sheet in *Blackmon* shows that the appellant filed her notice of interlocutory appeal on March 20, 2003. The version of the interlocutory-appeal statute in effect then merely stayed the commencement of trial, not all proceedings, pending the resolution of the appeal. Act of May 17, 2001, 77th Leg., R.S., ch. 1389, § 1, 2001 Tex. Gen. Laws 3575, 3575. The version of the statute that first applied the stay to all trial-court proceedings in certain instances did not become effective until September 1, 2003. Act of June 2, 2003, 78th Leg., R.S., ch. 204, §§ 1.03, 1.05(b), 2003 Tex. Gen. Laws 847, 849–50, 899.

785, 788 (Tex. 2020) (per curiam) (declining to decide whether stay barred filing nonsuit in trial court as nonsuit was filed directly with Court). In addition, the Court has recently held that the statutory stay is mandatory and without exception when an interlocutory appeal from the denial of a motion to dismiss under the Act is pending. *In re Geomet Recycling*, 578 S.W.3d 82, 86–87 (Tex. 2019). Finally, our court has previously held that the statutory stay prevents a party from amending its pleadings to drop a claim during the pendency of the appeal. *City of Houston v. Swinerton Builders*, 233 S.W.3d 4, 7–9 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

But we need not resolve whether Daniel's nonsuit was effective. Even if Daniel could file an effective nonsuit in the trial court during the pendency of this interlocutory appeal, a nonsuit does not moot any claims for affirmative relief made by the opposing party and Morris has made claims for affirmative relief.

Unlike a nonsuit, a dismissal under the Citizens Participation Act is with prejudice. *Gaskamp v. WSP USA, Inc.*, 596 S.W.3d 457, 468 (Tex. App.—Houston [1st Dist.] 2020, pet. dism'd) (en banc). In addition, a movant who obtains dismissal under the Act is entitled to costs and reasonable attorney's fees and may be awarded sanctions against the nonmovant. TEX. CIV. PRAC. & REM. CODE § 27.009(a).

In *Gaskamp*, we held that a nonsuit does not moot a motion to dismiss under the Act because, unlike the nonsuit, the motion may entitle the movant to dismissal with prejudice as well as costs, reasonable attorney's fees, and sanctions. 596

5

S.W.3d at 468–69. A movant's request for dismissal with prejudice, costs, reasonable attorney's fees, and sanctions under the Act are requests for affirmative relief, which the nonmovant cannot dispose of by nonsuiting his own claims. *Id.*

Morris requested dismissal of Daniel's suit as well as attorney's fees and sanctions in her motion to dismiss under the Act. Due to these claims for affirmative relief, Daniel's nonsuit does not render Morris's motion or this appeal moot. *Id.*

We deny Daniel's motion to dismiss the appeal.

**Morris's Citizens Participation Act Motion**

Morris argues that Daniel's legal action is subject to the Citizens Participation Act because it is based on or is in response to her exercise of the rights of free speech and association. She maintains that her communications and actions qualify as exercises of the rights of free speech and association because they concern her child's safety and education, which she characterizes as matters of public concern. Because Daniel did not make a prima facie case for each element of his contract claim, Morris argues, the trial court erred by not dismissing his legal action.

*Standard of Review and Applicable Law*

We review de novo a trial court's denial of a motion to dismiss under the Citizens Participation Act.[2] *Holcomb v. Waller Cty.*, 546 S.W.3d 833, 839 (Tex.

---

[2]  *See* TEX. CIV. PRAC. & REM. CODE §§ 27.001–.011. The Legislature amended certain provisions of the Citizens Participation Act in 2019. Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 1–9, § 12 (codifying amendments at TEX. CIV. PRAC.

6

App.—Houston [1st Dist.] 2018, pet. denied). We likewise interpret the Act and decide whether it applies to a legal action de novo. *See Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018); *Better Bus. Bureau of Metro. Houston v. John Moore Servs.*, 500 S.W.3d 26, 39 (Tex. App.—Houston [1st Dist.] 2016, pet. denied).

In assessing whether a legal action comes within the Act's scope, we rely on the Act's language, interpreting it as a whole rather than reading its individual provisions in isolation from one another. *Youngkin*, 546 S.W.3d at 680. We interpret the Act according to the plain, common meaning of its words, unless a contrary purpose is evident from the context or a plain reading of its text leads to absurd results. *Id.* We cannot judicially amend the Act by imposing requirements the Act does not or by narrowing or expanding its scope contrary to its terms. *Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 337 (Tex. 2017); *see ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 899 (Tex. 2017) (per curiam) (court presumes Legislature purposely omitted words not included in Act). Nor can we substitute the words of the Act to give effect to what we think the Act should say. *Coleman*, 512 S.W.3d at 901.

---

& REM. CODE §§ 27.001, 27.003, 27.005–.007, 27.0075, 27.009–.010). The amendments became effective September 1, 2019. *Id.* at § 11. Because this suit was filed after this date, it is governed by the amended version of the Act. *See id.*

The Act directs us to liberally interpret its provisions to fully effectuate its purpose, which "is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE §§ 27.002, 27.011(b). To accomplish this purpose, the Act provides a summary procedure in which a party may move to dismiss a legal action on the ground that the legal action is based on or is in response to the party's exercise of the right of free speech, right to petition, or right of association. *Id.* § 27.003(a); *see In re Lipsky*, 460 S.W.3d 579, 589–90 (Tex. 2015).

A motion to dismiss made under the Act generally entails a three-step analysis. *Youngkin*, 546 S.W.3d at 679–80. The movant first must demonstrate that the nonmovant's legal action is based on or is in response to the movant's exercise of the right of free speech, right to petition, or right of association. TEX. CIV. PRAC. & REM. CODE § 27.005(b)(1). The nonmovant's pleading is the best evidence of the nature of his legal action. *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017). When it is clear from the nonmovant's pleading that his legal action is covered by the Act, the movant need not show more to demonstrate that the Act applies. *Adams v. Starside Custom Builders*, 547 S.W.3d 890, 897 (Tex. 2018).

8

The Act defines the exercise of the rights of free speech, petition, and association. TEX. CIV. PRAC. & REM. CODE § 27.001(2)–(4). We are bound by these definitions. *Youngkin*, 546 S.W.3d at 680. In this case, the rights of free speech and association are at issue. The exercise of the right of free speech "means a communication made in connection with a matter of public concern." TEX. CIV. PRAC. & REM. CODE § 27.001(3). The exercise of the right of association "means to join together to collectively express, promote, pursue, or defend common interests relating to a governmental proceeding or a matter of public concern." *Id.* § 27.001(2).

Morris contends these rights are implicated because her communications and conduct are connected with or relate to "a matter of public concern." A matter of public concern means a statement or activity regarding:

(A) a public official, public figure, or other person who has drawn substantial public attention due to the person's official acts, fame, notoriety, or celebrity;

(B) a matter of political, social, or other interest to the community; or

(C) a subject of concern to the public.

*Id.* § 27.001(7). Taken together, these three provisions broadly define what constitutes a matter of public concern. *See Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam) (characterizing prior version of Act as broadly defining exercise of right of free speech). But the reach of these broad provisions is

9

not without limit. To be a matter of public concern, a claim must have public relevance beyond the interests of the parties. *Creative Oil & Gas v. Lona Hills Ranch*, 591 S.W.3d 127, 136 (Tex. 2019). Private disputes, whether sounding in contract or in tort, that merely affect the fortunes of the litigants are not matters of public concern. *Id.* at 134–37 (contract disputes about purely private matters, such as the pecuniary interests of the parties, are not matters of public concern under Act); *Gaskamp*, 596 S.W.3d at 475–77 (tort claims with no potential impact on wider community or public audience are not matters of public concern under Act).

If the movant carries her initial burden, the trial court must dismiss the nonmovant's legal action unless the nonmovant either establishes that his action is exempt from the Act or establishes by clear and specific evidence a prima facie case for each essential element of the challenged claims. TEX. CIV. PRAC. & REM. CODE §§ 27.005(c), 27.010; *see also Gaskamp*, 596 S.W.3d at 479 (party asserting exemption from Act bears burden to prove its applicability).

Finally, if the nonmovant makes a prima facie case in support of the challenged claims, the burden shifts back to the movant to establish an affirmative defense or other grounds entitling her to judgment as a matter of law. TEX. CIV. PRAC. & REM. CODE § 27.005(d); *Youngkin*, 546 S.W.3d at 679–80. If the movant does so, the trial court must dismiss the action. *Youngkin*, 546 S.W.3d at 681.

*Analysis*

Morris says that the communications and conduct Daniel alleges are breaches of the confidentiality clause fall within the scope of the Act's provisions safeguarding the exercise of the rights of free speech and association because they relate to their child's safety or welfare and education, which are matters of public concern. *See* TEX. CIV. PRAC. & REM. CODE § 27.001(2)–(3), (7). We disagree.

Daniel sued Morris for breach of a settlement agreement they entered into to resolve a dispute over the custody of their child. Daniel alleges that Morris breached the agreement's confidentiality clause by disclosing the agreement's terms to third parties. As remedies, Daniel seeks the return of the settlement amount he paid Morris and a declaration voiding the settlement agreement. In sum, this suit affects the fortunes of the litigants and their child, not a broader public.

To the extent Morris's alleged breaches of the settlement agreement's confidentiality clause concern the child's safety or welfare and education, this concern is too attenuated to make them a matter of public concern under the Act. In this regard, the Supreme Court's decision in *Creative Oil* is controlling.

In *Creative Oil*, a ranch sued to terminate an oil and gas lease. 591 S.W.3d at 130. The operator and lessee counterclaimed alleging the ranch had misrepresented the status of the lease to third-party purchasers of production and urged these third-party purchasers to stop making payments. *Id.* The ranch responded by filing a

11

motion to dismiss under the Citizens Participation Act, arguing that its statements to third parties were an exercise of the right to free speech because these communications addressed a matter of public concern. *Id.* The ranch maintained that its speech addressed a matter of public concern because, among other things, its speech related to goods, products, or services offered in the marketplace. *Id.* at 134 (relying on prior version of Act that explicitly included marketplace goods, products, and services in definition of "matter of public concern").

The Court rejected the ranch's position. *Id.* at 134–36. It observed that almost all contracts involve a marketplace good, product, or service but that this is not enough to make every communication about these contracts a matter of public concern. *Id.* at 134. The Court reasoned that for the ranch's statements to be on a matter of public concern, the statements had to be relevant to the wider marketplace—the public audience of potential buyers and sellers—rather than just the parties to the contract and the third-party purchasers to whom the ranch made the statements. *Id.* at 134–36. The Court held that a private contract dispute affecting only the fortunes of the litigants necessarily is not a "matter of public concern" under any definition of these words. *Id.* at 137.

Though the settlement agreement between Morris and Daniel concerns a family matter, rather than a commercial one, it is materially indistinguishable from the production contract at issue in *Creative Oil*. As in *Creative Oil*, Morris and

12

Daniel's dispute arises from a private agreement. This agreement affects them and their child. The agreement and Morris's alleged breaches of its confidentiality clause do not have any relevance to the public at large, which has no stake in the custody arrangements of the child or the parents' agreement to remain silent as to certain matters related to their custody dispute. Morris's alleged statements and actions involve third parties, like the child's school, but so did the ranch's statements in *Creative Oil*. The involvement of a limited number of third parties does not transform this contractual dispute into a matter of public concern. Accepting at face value Morris's claim that her alleged statements and actions concern the child's safety and education, the safety and education of a single child is not a public concern unless it has some relevance to a broader public audience. Morris does not explain how or why the present dispute possesses such relevance. We discern none.

Morris relies on *DeAngelis v. Protective Parents Coalition* for the proposition "that communications or statements regarding the welfare of children are matters of public concern" under the Citizens Participation Act. 556 S.W.3d 836, 852 (Tex. App.—Fort Worth 2018, no pet.). To the extent *DeAngelis* could be read as holding that any and all statements or actions regarding a child's welfare are of public concern, we disagree. The statutory definition of "matter of public concern" does not categorically include all statements or activities relating to child welfare within its ambit. *See* TEX. CIV. PRAC. & REM. CODE § 27.001(7). As the Supreme Court has

held, to qualify as a matter of public concern, a communication or conduct must have some relevance to a broader public audience, not just the litigants or limited third parties who interact with them. *Creative Oil*, 591 S.W.3d at 134–37.

Moreover, *DeAngelis* is not as broad as Morris suggests. Its facts are a far cry from those involved in the present contractual dispute. In *DeAngelis*, a nonprofit organization critical of Texas family courts disparaged certain family law attorneys by name. *Id.* at 841–42. The attorneys petitioned to take pre-suit depositions of the organization and several of its officers. *Id.* at 842–44. The organization and its officers moved to dismiss the attorneys' petition under the Act. *Id.* at 844–45. It was in this context—involving a nonprofit organization that expressly addressed its complaints about the family court system and the attorneys who practiced in it to the public at large for the ostensible purpose of holding them publicly accountable— that the *DeAngelis* court held the organization's statements about child welfare were a matter of public concern. *See id.* 841, 852.

Other decisions cited by Morris for the proposition that any and all statements or activities regarding a child's welfare are matters of public concern are also factually distinguishable in that they have at least some relevance to a broader public. In *Watson v. Hardman*, for example, the court held that accusations that the plaintiffs had stolen publicly solicited charitable funds earmarked for three orphans addressed a matter of public concern. 497 S.W.3d 601, 607 (Tex. App.—Dallas 2016, no pet.).

14

Similarly, in *Bilbrey v. Williams*, the court held that allegations that an adult coach verbally abused adolescent umpires at a community's organized youth baseball league games addressed a matter of public concern. No. 02-13-00332-CV, 2015 WL 1120921, at *8–11 (Tex. App.—Fort Worth Mar. 12, 2015, no pet.) (mem. op.). In contrast, Daniel's contract suit, based on allegations that Morris breached a confidentiality clause in an agreement they executed to resolve a prior custody dispute over their child, lacks a comparable connection with a broader public.

Morris also relies on *Spencer v. Overpeck*, No. 04-16-00565-CV, 2017 WL 993093 (Tex. App.—San Antonio Mar. 15, 2017, pet. denied) (mem. op.). Morris asserts the *Spencer* court held that accusations that a teacher sexually abused a pupil at an elementary school were a matter of public concern as it concerned child safety. While the accusers made this argument, the *Spencer* court did not rule on it. *See id.* at *4. Instead, the court held the Citizens Participation Act applied because the accusations—made in reports to law enforcement and in court filings—implicated the exercise of the right to petition as defined by the Act. *See id.* At any rate, assuming that allegations of sexual abuse of a pupil by an elementary school teacher qualify as a matter of public concern, they do so because allegations of child sex abuse implicate the welfare and safety of all other pupils over whom the teacher has authority or with whom the teacher potentially has contact. At a minimum, allegations of this nature are of immediate concern to a broader public consisting of

15

the parents of these other pupils. Morris's alleged breaches of a contractual confidentiality clause are not comparable to alleged schoolhouse child sex abuse.

Further, Morris's argument as to the child's safety and education does not address Daniel's claim that she violated the settlement agreement's confidentiality clause by sharing the agreement or its terms with a party to an unrelated out-of-state lawsuit in which she is not a litigant. That alleged communication or action bears no obvious relation to the child's safety and education. Morris does not contend otherwise. Instead, she argues the record is devoid of evidence she shared the agreement or its terms with a party to the out-of-state lawsuit. This may or may not be true. But whether there is any evidence she did so is relevant to the second step of the analysis—specifically, whether Daniel has made a prima facie case in support of the breach element of his contract claim—not the first step of the analysis, which focuses solely on whether an alleged communication or action falls within the scope of the Act. *See Youngkin*, 546 S.W.3d at 679. Morris has not argued let alone shown that this alleged breach of contract involved a matter of public concern.

We conclude that Morris's alleged communications and actions do not relate to a matter of public concern and that Daniel's legal action therefore is not based on or in response to Morris's exercise of her free-speech or associational rights. The trial court did not err in denying Morris's motion to dismiss Daniel's legal action under the Citizens Participation Act because the Act does not apply to his legal

16

action. Because the Act does not apply, we do not proceed to the second step of the analysis and decide whether Daniel made a prima facie case supporting his claims.

## Morris's Procedural Complaint

Morris argues the trial court erred in allowing Daniel to respond to her motion to dismiss and in considering his response because he did not respond by the statutory deadline. *See* TEX. CIV. PRAC. & REM. CODE § 27.003(e) (response due no later than seven days before hearing on motion absent contrary agreement or order). Had the trial court disregarded Daniel's response, Morris argues, it would have had no choice but to find that he did not make a prima facie case supporting his claims.

We reject Morris's procedural complaint because it does not matter. We first must decide whether Daniel's legal action is within the scope of the Citizens Participation Act and have done so. *See Creative Oil*, 591 S.W.3d at 132 (court decides de novo whether communication at issue is matter of public concern). Because we have concluded that Daniel's legal action is not within the Act's scope, whether he made a prima facie case in support of each essential element of his claims is irrelevant. Thus, the trial court's consideration of Daniel's response did not harm Morris. *See* TEX. R. APP. P. 44.1(a) (error not reversible unless it probably caused rendition of improper judgment or prevented proper presentation of appeal).

17

## CONCLUSION

We affirm the trial court's order denying Morris's motion to dismiss.


Gordon Goodman
Justice

Panel consists of Justices Goodman, Landau, and Adams.