

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-25-00684-CV

_____


IN RE KONRAD HALBERT, AUBREY GIDEON, AND ARGENT TRUST
COMPANY, Relators


Original Proceeding
348th District Court of Tarrant County, Texas
Trial Court No. 348-370408-25


Before Kerr, Bassel, and Wallach, JJ.
Memorandum Opinion by Justice Wallach

# MEMORANDUM OPINION

Relators filed this petition for writ of mandamus asking that we vacate the trial court's order granting presuit depositions under Rule 202 of the Texas Rules of Civil Procedure. *See* Tex. R. Civ. P. 202.1. Because the Real Party in Interest showed that it had already decided it had valid claims instead of potential claims and because it failed to show that the likely benefit of allowing the requested depositions outweighed the procedure's burden or expense, we hold that the trial court abused its discretion by granting presuit depositions and that Relators have no adequate remedy at law. *See* Tex. R. Civ. P. 202.2(d)(2), 202.4(a)(2). Accordingly, we conditionally grant their petition for writ of mandamus.

## I. Background

### A. Events Giving Rise to the Litigation

Konrad Halbert and Aubrey Gideon worked for First Financial Trust and Asset Management, Co. For First Financial's Fort Worth office, Halbert was the regional president, and Gideon was senior vice president and a trust administrator. Both Halbert and Gideon left First Financial, and both subsequently began working for Argent Trust Company. A week or two after Halbert and Gideon left, their assistant also left First Financial and joined Argent. And according to First Financial, shortly after Halbert and Gideon left, a First Financial customer whose account represented more than $350,000 in annual revenue and a second First Financial customer with over $4 million worth of assets moved their trust business to Argent.

2

First Financial asserted that Halbert had managed the first customer while Gideon had managed the second.

## B. First Financial and Relators Exchange a Series of Letters

Both Halbert and Gideon had signed a confidential information, nonsolicitation, and noncompetition agreement with First Financial. Less than three weeks after Halbert and Gideon left First Financial, First Financial sent a letter to Argent reminding it of Halbert's and Gideon's continuing obligations to First Financial.

About two months later, First Financial sent a second letter to Argent in which it alleged that Halbert had breached the confidential information, nonsolicitation, and noncompetition agreement by operating within a restricted area, by soliciting and causing a First Financial employee to leave it and to join Argent, and by actively soliciting and inducing First Financial clients to move to Argent.[1] First Financial demanded $500,000 in damages and warned, "Failure to promptly remit this sum will result in legal action, including claims for exemplary damages and attorneys' fees."

Argent and Halbert denied the allegations by letter a week later.

However, First Financial soon sent a third letter in which it again demanded $500,000 in damages from Argent and Halbert for violating the confidential

---

[1]This letter did not mention Gideon.

3

information, nonsolicitation, and noncompetition agreement.[2] It again warned, "[A]bsent immediate and verifiable assurances of compliance and payment for damages already incurred, [First Financial] is fully prepared to proceed with injunctive and damages actions without additional notice."

Within a week, Argent and Halbert responded in writing and again disputed the allegations.

### C. First Financial's Rule 202 Petition and Proceedings

About a month later, First Financial filed its Rule 202 petition requesting presuit discovery against Halbert, Gideon, and Argent.

A week after First Financial filed the petition, Relators provided First Financial with copies of documents between Argent and former First Financial clients and purportedly signed by the former First Financial clients in which they represented that neither Halbert nor Gideon had contacted or communicated with them to discontinue First Financial's services and that neither Halbert nor Gideon had solicited them to engage Argent to provide services to them.

Approximately one month after First Financial filed the petition, Relators filed objections and a response.

The trial court conducted an evidentiary hearing on First Financial's petition, accepted posthearing briefing, and ultimately signed an order granting First Financial's

---

[2]This letter did not mention Gideon.

petition. The order authorized First Financial to depose Halbert, Gideon, and a corporate representative of Argent:

> It is therefore ORDERED, ADJUDGED and DECREED that [First Financial] is permitted to take the oral deposition of Halbert, Gideon, and a corporate representative of Argent (the "Depositions"), and such Depositions shall occur no later than 21 calendar days from the date of this Order, unless otherwise agreed to by the Parties.
>
> It is further ORDERED that each Deposition must not exceed three hours in length on the record, as measured by a deposition officer authorized by law to take depositions pursuant to Tex. R. Civ. P. 199.1(a).
>
> It is further ORDERED that [First Financial] must serve notice of the Depositions pursuant to Tex. R. Civ. P. 199.2(b)(1), with service of same pursuant to Tex. R. Civ. P. 21a. [First Financial] may take each Deposition in person or, alternatively, remotely via videoconference (i.e. Zoom); however, if [First Financial] elects to take the Deposition in-person, [Relators] may select the location of the Deposition so long as such location is within the State of Texas.
>
> It is further ORDERED[] that the scope of each Deposition is limited to reasonable inquiry on the following subjects from the date of Halbert and Gideon's resignation on May 9, 2025:
>
> a)  The possession, use, and disclosure of [First Financial's] Confidential Information by [Relators];
>
> b)  Communications between Halbert and/or Gideon on one hand and Argent on the other regarding the possession, use, or disclosure of [First Financial's] Confidential Information;
>
> c)  Communications between Halbert and [First Financial's] current and former employees regarding Halbert's change in employment, Argent, and/or the current/former employees' interest in joining Argent;
>
> d)  Communications between Gideon and [First Financial's] current and former employees regarding Halbert's change in

5

employment, Argent, and/or the current/former employees' interest in joining Argent;

e) Communications between Halbert and [First Financial's] current and former customers regarding changing asset management services from [First Financial] to an alternative company;

f) Communications between Gideon and [First Financial's] current and former customers regarding changing asset management services from [First Financial] to an alternative company; and

g) The services provided by Argent to [First Financial's] current and former clients with whom Halbert and/or Gideon had contact . . ., or knowledge of, by virtue of their employment with [First Financial], and the revenue and profits generated by Argent for such services.

It is further ORDERED, [First Financial's] notice of deposition must describe with reasonable particularity the matters on which examination is requested pursuant to Tex. R. Civ. P. 199.2(b)(1), which matters shall not exceed the scope of the Depositions as specified in this Order. Pursuant to Tex. R. Civ. P. 199.2(b)(1), Argent must designate one or more individuals to testify on its behalf and set forth, for each individual designated, the matters on which the individual will testify, no later than three days after service of [First Financial's] notice of deposition.

Relators filed this petition for writ of mandamus on December 9, 2025.

## II. Presuit Depositions

Rule 202 of the Texas Rules of Civil Procedure authorizes presuit depositions in two circumstances: (1) "to perpetuate or obtain the person's own testimony or that of any other person for use in an anticipated suit" or (2) "to investigate a potential claim or suit." Tex. R. Civ. P. 202.1; *In re Kaddatz*, No. 02-23-00336-CV, 2023 WL 7210337, at *3 (Tex. App.—Fort Worth Nov. 2, 2023, orig. proceeding)

(mem. op.); *In re Hernandez*, No. 13-21-00244-CV, 2022 WL 627232, at *7 (Tex. App.—Corpus Christi–Edinburg Mar. 3, 2022, orig. proceeding) (mem. op.). Rule 202 depositions have never been intended for routine use, and the intrusion into otherwise private matters outside of a lawsuit that authorizes it should not be taken lightly. *Kaddatz*, 2023 WL 7210337, at *3. Demanding discovery from someone before disclosing what the issues are presents practical as well as due process problems. *Id.* Courts must strictly limit and carefully supervise presuit discovery to prevent the rule's abuse. *Id.* The likely benefit of allowing the petitioner to take the requested deposition to investigate a potential claim must outweigh the burden or expense of the procedure. Tex. R. Civ. P. 202.4.

### III. Standard of Review

Mandamus is both an extraordinary and a discretionary remedy. *Kaddatz*, 2023 WL 7210337, at *2; *Hernandez*, 2022 WL 627232, at *7. The relator must show that the trial court abused its discretion and that the relator lacks an adequate remedy by appeal. *Kaddatz*, 2023 WL 7210337, at *2; *Hernandez*, 2022 WL 627232, at *7. A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner or when it acts with disregard for guiding rules or principles. *Kaddatz*, 2023 WL 7210337, at *2; *Hernandez*, 2022 WL 627232, at *7. We defer to a trial court's factual determinations that have evidentiary support, but we review its legal determinations de novo. *Kaddatz*, 2023 WL 7210337, at *2. An error of law or an erroneous application of the law to the facts constitutes an abuse of discretion. *Id.*

7

Historically, mandamus has issued for discovery that is well outside the proper boundaries. *Hernandez*, 2022 WL 627232, at *7. Once taken, depositions cannot be "untaken." *Id.* Thus, mandamus may be used to set aside an improper Rule 202 order. *Kaddatz*, 2023 WL 7210337, at *2; *Hernandez*, 2022 WL 627232, at *7.

## IV. Application

In First Financial's sixteen-page petition requesting presuit discovery, not once did it cite Rule 202.4 of the Texas Rules of Civil Procedure, which sets out the standard for granting the relief it sought. First Financial did, however, devote a paragraph to tracking the standard:

> By this pre-suit discovery, [First Financial] seeks necessary facts to make an informed decision as to the merits of a potential lawsuit and to investigate potential claims against Halbert, Gideon, and/or Argent. [First Financial] believes that pre-suit discovery pursuant to Tex. R. Civ. P. 202.1(b) will result in saving judicial resources and costs to prosecute any potential suit(s). Specifically, the likely benefit of allowing [First Financial] to conduct the requested pre-suit discovery and investigate potential claims outweighs the burden and expense of the procedure. Argent is a national company with over 40 locations across 19 states. [First Financial] seeks only a deposition and limited document discovery regarding Halbert and Gideon's actions. The burden on Halbert and Gideon is likewise minimal since the discovery sought is on the limited issues of Halbert and Gideon's potential violations of their obligations to [First Financial] as defined in the Agreement, including their likely solicitation of [First Financial's] customers and employees, and use of [First Financial's] Confidential Information.

Ordinarily, a party may not rely on its Rule 202 petition to meet its burden of proving the facts asserted therein. *MCR Oil Tools, LLC v. Dillard*, No. 02-25-00055-CV, 2025 WL 2884207, at *5 (Tex. App.—Fort Worth Oct. 9, 2025, no pet.) (mem. op.);

8

*Kaddatz*, 2023 WL 7210337, at *4; *DeAngelis v. Protective Parents Coal.*, 556 S.W.3d 836, 855 (Tex. App.—Fort Worth 2018, no pet.), *overruled on other grounds by Montoya Frazier v. Maxwell*, No. 02-23-00103-CV, 2025 WL 494699, at *2 (Tex. App.—Fort Worth Feb. 13, 2025, pet. denied) (en banc).[3] Accordingly, First Financial had an evidentiary hearing, and our analysis focuses on what First Financial showed—or did not show— during this hearing.

### A. The Hearing

#### 1. Potential Claims or Existing Claims?

At the Rule 202 hearing, First Financial's representative twice stated that First Financial had valid claims against Halbert, Gideon, and Argent. When asked on what basis he had reached that conclusion, he responded that he was relying on the information that First Financial already had and that he had already discussed at the hearing. The representative's testimony was consistent with First Financial's two demand letters for $500,000 for breaches of the confidential information, nonsolicitation, and noncompetition agreements. Demands for $500,000 for breaches of contractual agreements are consistent with existing claims. *See* Tex. R. Civ. P. 47.

Based on the representative's testimony, the trial court also indicated on two occasions that it believed that First Financial had existing claims. In the first instance,

---

[3]Based on legislative amendments after *DeAngeli*s was decided, *Montoya Frazier* held that a Rule 202 petition is not a "legal action" for purposes of the Texas Citizens Participation Act. 2025 WL 494699, at *1–2.

the trial court said, "[H]ere's the point. [First Financial has] a bunch of noncompete agreements . . . , and [Halbert and Gideon] take a bunch of customers . . . and a bunch of employees and go work for a direct competitor . . . , and now y'all don't even want to have basic discovery . . . ." In the second instance, it commented, "Your client took a bunch of their employees and their clients in violation of noncompetes."

In its petition, First Financial alleged that it sought Rule 202 discovery to investigate potential claims. *See* Tex. R. Civ. P. 202.2(d)(2). But based on the record, neither First Financial nor the trial court saw First Financial as having just potential claims. Rather, both saw it as having existing claims with firm factual foundations. Indeed, the trial court described the discovery at issue at this point as "basic discovery." But presuit discovery is anything but basic discovery. *See Kaddatz*, 2023 WL 7210337, at *3. For Rule 202 purposes, because First Financial already had more than enough information to institute litigation without resorting to Rule 202, the requested presuit discovery was unnecessary. *See Hernandez*, 2022 WL 627232, at *10.

### 2. Hesitation in the Face of Denials

When asked why First Financial wanted the Rule 202 depositions, its representative responded that it had not been privy to the conversations between its former clients and Relators and that Relators' counsel had asserted that he was 100 percent confident that the agreements had not been violated. In the same vein, the representative explained that Argent had also provided documents—prepared on Argent letterhead—that were purportedly signed by First Financial's former clients in

10

which the former clients represented that neither Halbert nor Gideon had contacted or communicated with them to discontinue the services with First Financial and that neither Halbert nor Gideon had solicited them to engage Argent to provide services to them. The representative entertained the idea that the agreements might not have been violated. Although it is laudable that First Financial did not want to file a lawsuit unless there was good cause for filing one, the question is whether the likely benefit of allowing it to take the requested depositions outweighed the burden or expense of the procedure. *See* Tex. R. Civ. P. 202.4; *In re Acclarent, Inc.*, No. 02-24-00228-CV, 2024 WL 2873617, at *4 (Tex. App.—Fort Worth June 7, 2024, orig. proceeding) (mem. op.).

### 3. Whether the Likely Benefit Outweighs the Burden or Expense of the Procedure

The representative explained that the benefit of the depositions was that First Financial could talk directly to Relators instead of getting its information through their attorneys. Ultimately, the representative asserted, First Financial wanted to protect its goodwill and sought assurances that the agreements had not been breached. When asked about the burden to Halbert, Gideon, and Argent, First Financial's representative responded, "[I]t might be a slight inconvenience, but no more than our being here today."

### 4. The Trial Court Agrees to Posthearing Briefing

At the close of the hearing, the parties agreed to submit and the trial court agreed to review posthearing briefing.

### B. Posthearing Briefing

### 1. First Financial

In First Financial's posthearing brief, it argued that it presented evidence showing how the procedure would be beneficial but, conversely, Relators presented no evidence showing how that procedure would be burdensome. First Financial asserted, "[Relators] submitted no evidence of burden—at all."

### 2. Relators

In Relators' posthearing brief on the issue of the burden or expense of the procedure, they relied on three cases: *Acclarent, Inc.*, 2024 WL 2873617; *In re Guillory*, No. 13-23-00410-CV, 2024 WL 2066830 (Tex. App.—Corpus Christi–Edinburg May 8, 2024, orig. proceeding) (mem. op.); and *Kaddatz*, 2023 WL 7210337. We agree with Relators that when taken together, these cases show that First Financial failed to meet its burden of showing that the likely benefit of allowing the depositions outweighed the burden or expense of the procedure.

### a. *Acclarent, Inc.*

Relators cited *Acclarent, Inc.* for the proposition that they did not have to show how the depositions would be burdensome but, rather, First Financial had to show how the depositions' benefits outweighed their burden on Relators. *See*

12

2024 WL 2873617, at *3–4. Other caselaw supports Relators' position that First Financial bore the burden of proof. *See Guillory*, 2024 WL 2066830, at *5; *DeAngelis*, 556 S.W.3d at 855; *In re PrairieSmarts LLC*, 421 S.W.3d 296, 306 (Tex. App.—Fort Worth 2014, orig. proceeding).

At the hearing, the evidence that First Financial presented on that issue was scant: "[The burden Relators experience] might be a slight inconvenience, but no more than our being here today." First Financial articulated "little to nothing more than" the customary burdens of depositions, which "have little bearing on the benefit and burden analysis applicable to presuit depositions." *Guillory*, 2024 WL 2066830, at *6.

### b. *Guillory*

Relators then cited *Guillory* for the proposition that presuit depositions of former employees by former employers impose a substantial burden on the former employees. In *Guillory*, the court wrote that the burden was substantial where the dispute was over—as here—the misappropriation of trade secrets and the theft of confidential and proprietary information:

> [The former employer] seeks to depose Guillory, a former employee, to glean information related to its potential claims against him regarding the misappropriation of trade secrets and the theft of confidential and proprietary information. Deposing a former employee regarding these matters is "intrusive, expensive, and time-consuming" and imposes a "substantial" burden on the proposed deponent. *In re Hewlett Packard*, 212 S.W.3d 356, 362 (Tex. App.—Austin 2006, orig. proceeding [mand. denied]); *see In re PrairieSmarts LLC*, 421 S.W.3d [at] 306 . . . (applying rules regarding the discovery of trade secret information to presuit

13

depositions); *see also In re Hernandez*, 2022 WL 627232, at *10. [The former employer's] argument that the benefit of deposing Guillory might allow it to determine whether it has legitimate claims against him, standing alone, "does not outweigh the burden imposed on [Guillory], particularly where valuable trade secrets are involved." *In re Hewlett Packard*, 212 S.W.3d at 362. To hold otherwise "would allow individuals or companies to take [presuit] depositions of business competitors in a broad range of circumstances because the expense of taking a limited number of depositions can almost always be argued to be less than the expense of filing and prosecuting a lawsuit." *Id.*

*Guillory*, 2024 WL 2066830, at *6.

### c. *Kaddatz*

The third case that Relators cited, *Kaddatz*, reiterated the substantial burden placed on former employees when a former employer wants to depose them about why they left their employment and whether their leaving was impacted by knowledge gained while working for the former employer:

Rule 202 petitions present due-process concerns by demanding discovery from someone before telling them what the issues are. . . . [A] former employee shoulders an unquantifiable, substantial burden when forced to submit to a deposition before a former employer and disclose why he left to work for a competitor, explain what he is doing for that competitor, and discuss how his current work might or might not have been affected by knowledge gained while working for his former employer. *See Hewlett Packard*, 212 S.W.3d at 362. This is especially true when no lawsuit has been filed. *See id.*

*Kaddatz*, 2023 WL 7210337, at *7.

### d. Whether *Acclarent, Inc.*, *Guillory*, and *Kaddatz* are Distinguishable

First Financial argues that Relators' reliance on *Acclarent, Inc.*, *Guillory*, and *Kaddatz* is misplaced because all three are distinguishable for five reasons. All five reasons are unpersuasive.

Initially, First Financial denies that *Acclarent, Inc.* articulated a heightened standard when former employers and employees are involved. True, but *Acclarent, Inc.* did not involve a former employer and former employee. *See Acclarent, Inc.*, 2024 WL 2873617, at *1. We would not expect it to address that standard, and Relators did not cite *Acclarent, Inc.* for that proposition. They cited it to show that First Financial bore the burden of proof. *Id.* at *3–4.

Second, First Financial attempts to distinguish *Acclarent, Inc.*, *Guillory*, and *Kaddatz* because no evidence was offered in those cases, whereas First Financial introduced documents and its representative testified. *See id.*, at *6; *Guillory*, 2024 WL 2066830, at *5–6; *Kaddatz*, 2023 WL 7210337, at *6, *9. True, but the documents and testimony went to the underlying dispute. On the subject of the cost–benefit analysis, on direct examination, First Financial's representative testified for less than two pages and provided the trial court with unremarkable information—appearing for depositions was inherently inconvenient—coupled with his partisan opinion that the inconvenience was outweighed by the benefit First Financial expected from the depositions. As *Guillory* stated, this is "little to nothing" and had

15

"little bearing on the benefit and burden analysis applicable to presuit depositions." 2024 WL 2066830, at *6.

Third, First Financial asserts that it minimized the burden by limiting the duration of each deposition to three hours, by permitting the depositions to be done remotely, and by limiting the scope of the depositions. True, but First Financial limited the scope of the depositions to precisely those areas that *Guillory* and *Kaddatz*—and *Hewlett Packard* years before them—found unacceptably burdensome. "[A] former employee shoulders an unquantifiable, substantial burden when forced to submit to a deposition before a former employer . . . ." *Kaddatz*, 2023 WL 7210337, at *7. The former employee will be asked to "disclose why he left to work for a competitor, explain what he is doing for that competitor, and discuss how his current work might . . . have been affected by knowledge gained while working for his former employer." *Id.* The purpose is to "glean information related to [the former employer's] potential claims against [the former employee] regarding the misappropriation of trade secrets and the theft of confidential and proprietary information." *Guillory*, 2024 WL 2066830, at *6. Although Relators denied First Financial's allegations, First Financial wanted the depositions to obtain precisely that type of information.

Fourth, First Financial notes that *Acclarent, Inc.*, *Guillory*, and *Kaddatz* all relied on *Hewlett Packard*, *see Acclarent, Inc.*, 2024 WL 2873617, at *4, *Guillory*, 2024 WL 2066830, at *6, *Kaddatz*, 2023 WL 7210337, at *7, but *Hewlett Packard* was concerned that a former employer would use Rule 202 to depose a former employee

16

to learn the current employer's trade secrets. *See Hewlett Packard*, 212 S.W.3d at 361–64. First Financial states that Argent's trade secrets are not a concern here. Relators assert that they are, and we agree.

Relators contend the trial court's order permits discovery of confidential information, including revenue and profit for clients. Provision (g) permits inquiries into revenue and profits:

> g)　　The services provided by Argent to [First Financial's] current and former clients with whom Halbert and/or Gideon had contact . . . , or knowledge of, by virtue of their employment with [First Financial], and the revenue and profits generated by Argent for such services.

In Relators' posthearing brief in opposition to First Financial's Rule 202 Deposition, they asserted that revenue and profits were confidential information. And in their petition, they complain, "Essentially, the Order permits First Financial to dig through Argent's financials."

Fifth and finally, First Financial asserts *Guillory* and *Kaddatz* are distinguishable because the party seeking presuit discovery in those cases had existing litigation in which it could have sought regular discovery against the proposed deponents, whereas First Financial does not have any other existing litigation against Relators. *See Guillory*, 2024 WL 2066830, at *6–7; *Kaddatz*, 2023 WL 7210337, at *8–9. True, but this distinction does not help First Financial.

Both *Guillory* and *Kaddatz* were decided on two bases. The first was the presuit proponent's failure to meet its burden under Rule 202.4(a)(2). *Guillory*,

17

2024 WL 2066830, at *5–6; *Kaddatz*, 2023 WL 7210337, at *4–8. The second was the availability of discovery in other litigation. *Guillory*, 2024 WL 2066830, at *6–7; *Kaddatz*, 2023 WL 7210337, at *8–9. Both bases independently supported the holding that the trial court had abused its discretion by ordering presuit depositions under Rule 202. The fact that one of the two bases is absent but the other is present does not help First Financial.

First Financial's attempts to distinguish *Acclarent, Inc.*, *Guillory*, and *Kaddatz* are not persuasive.

## C. Summary

The record shows that First Financial was not investigating potential claims but was, instead, investigating existing claims; thus, First Financial was using Rule 202 improperly. *See* Tex. R. Civ. P. 202.2(d)(2). And the record does not show that First Financial met its burden of showing that the likely benefit of allowing the requested depositions outweighed the burden or expense of the procedure, so on that basis too, Rule 202 discovery was improper. *See* Tex. R. Civ. P. 202.4(a)(2). We hold that the trial court abused its discretion by granting First Financial's petition for Rule 202 presuit discovery.

## V. Conclusion

We conditionally grant Relators' petition for writ of mandamus. The trial court is ordered to vacate its order granting First Financial's Rule 202 petition and to render an order denying the same. Our writ will issue only if the trial court fails to comply.[4]

/s/ Mike Wallach
Mike Wallach
Justice

Delivered: February 12, 2026

---

[4]Relators had other arguments, but resolving them is not necessary to our disposition. *See* Tex. R. App. P. 47.1, 52.8(d).

19